GOVANE BUILDING COMPANY ET AL. *v.* SUN
MORTGAGE COMPANY ET AL.

[No. 80, October Term, 1928.]

*Decided January 25th, 1929.*

The cause was argued before BOND, C. J., and URNER,
ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*Bernard H. Conn* and *R. E. Kanode,* with whom was
*Israel S. Gomborov* on the brief, for the appellants.

*Francis E. Pegram* and *J. Kemp Bartlett, Jr.,* with whom
was *Milton Edelson* on the brief, for the appellees.

ADKINS, J., delivered the opinion of the Court.

This is a suit in equity in which the validity of a mortgage is challenged on the ground of an alleged false affidavit to the consideration.

The bill of complaint is by the appellee, the Sun Mortgage Company, mortgagee in a subsequent mortgage, and the defendants are the Govane Building Company of Baltimore City, Incorporated, the common mortgagor; Charles E. Ehman and Benjamin Weinstein, incorporators and officers of said mortgagor; the wife of Weinstein; Thomas Isekoff, the mortgagee named in the challenged mortgage; Joseph B. Moss, to whom it was assigned; and certain material men, mortgagees in two junior mortgages.

The bill alleges that the said building company, Ehman, and Weinstein, in March, 1926, entered into negotiations with plaintiff to borrow $3,200 for the purpose of redeeming certain ground rents and erecting eight houses in or near Govans, a suburb of Baltimore City, and recently annexed thereto, and offered as security therefor a first mortgage on certain land on the southeast side of Park Avenue, and a second mortgage on certain other property, which said loan was finally accepted and consummated by the execution of a mortgage from the building company, Weinstein and wife, and Ehman, to plaintiff, dated April 13rd, 1926, and duly recorded; that said mortgagors represented said land on the southeast side of Park Avenue to be free from mortgages and all other incumbrances; that said mortgagors subsequently executed mortgages upon the same property to certain material men; that the mortgage to plaintiff being in default, and foreclosure proceedings being about to be instituted, the said Moss informed plaintiff that he was the holder of a first mortgage on a portion of the said property on the southeast side of Park Avenue, which mortgage he acquired by assignment from the said Isekoff, said mortgage bearing date of August 1st, 1924, the date of the assignment being December 30th, 1926, both mortgage and assignment being duly recorded; that said mortgage to Isekoff is not a lien on the property mortgaged to plaintiff, the mortgage to Isekoff having been made for a simulated or pretended consideration, no

money passing thereunder from Isekoff to the mortgagor, and the affidavit thereto was false and fraudulent, and that said mortgage should be declared null and void; that the said Moss never paid said Isekoff any consideration for the assignment of said mortgage, but that said assignment was made for a pretended consideration and to hinder and delay plaintiff and other creditors of said building company; that the houses erected on said property are still in an uncompleted condition, and said building company is insolvent and unable to finish them; that while plaintiff's mortgage is in default, it cannot foreclose the same and pass a good title to purchasers of said property by reason of the invalid mortgage held by Moss, which casts a cloud on the title. The prayer of the bill is: (1) That the mortgage to Isekoff and the assignment to Moss be declared null and void. (2) That a receiver be appointed to complete the buildings and sell the property, and to bring the proceeds into court, to be distributed to the payment of costs of this proceedings, the costs of the completion of the buildings, and to plaintiff and said junior mortgagees. (3) For further relief.

All the defendants admit the insolvency and consent to the appointment of a receiver, but the building company, Weinstein and wife, Ehman, Isekoff, and Moss deny the material allegations of the bill as to fraud. Their answers admit that no money passed from Isckoff to the mortgagors or from Moss to Isekoff, but aver that the consideration for the mortgage was given by Moss and the mortgage taken in the name of Isckoff as a matter of convenience, Moss being in business in Washington, and it being contemplated that releases would be required from time to time as lots were sold or leased, and Isckoff being counsel for both the mortgagor and said Moss, and being informed by all the parties that the loan had been made and requested to take the mortgage as agent for Moss.

The facts of the case as developed by the testimony seem to be substantially as follows: In the early part of the year 1924 Charles E. Ehman, a contractor and builder, owned the property described in plaintiff's mortgage, and desired to develop it, but had not the money and was not in a position to get it through his own efforts. So he proposed to Wein-

404

stein that if he would provide the money necessary to get the development under way and to get several houses started, so that the scheme could be further financed by creating ground rents or giving mortgages, he, Ehman, would put up his lots against the money to be raised by Weinstein, and they would share equally in the ownership and profits. It was then supposed that the amount required to launch the enterprise would be about $5,000. So it was arranged that the Govane Building Company should be incorporated and the said lots conveyed to it by Ehman, or by Charles Ehman & Sons, the corporation which held the title.

Probably a little before the actual incorporation of the Govane Building Company, but at or about the time building operations were to begin on said lots, Weinstein, in compliance with his agreement, began getting together money for said operations, most of which was furnished by Moss, knowing it was to be used in said operations and on the promise that said loans up to $5,000 should be secured by a mortgage of said lots. $3,510 was raised by Moss in April, 1924, by mortgaging property he and his wife owned on Maple Avenue, the proceeds of which mortgage were turned over directly to Weinstein by the mortgagee, a building association; $125 and $730 were given by Moss to Weinstein by checks dated February 9th, 1924, and February 27th, 1924. Both Moss and Weinstein testified that in addition to the above amounts, other sums were paid over to Weinstein in cash, more than enough to make up the sum of $5,000, for which sum it was agreed that a mortgage of said lots would be given. Weinstein testified that a calculation was made at the time the check for $730 was given, and the amount of that check was the amount required to make up the sum of $5,000, which Moss had agreed to lend on the mortgage, the $3,510 raised by Moss on the Maple Street property having been arranged for prior to that date.

The testimony of Moss, Weinstein, and Ehman is that the mortgage of August 1st, 1924, from the Govane Building Company to Isekoff for $5,000 was to secure the amount due by said company to Moss, and it was taken in the name of

Isekoff as a matter of convenience in giving releases when required. There is absolutely no contradiction of any of this testimony. Of the $5,000 claimed to have been lent by Moss, certainly $4,425 is fairly well accounted for, and unless the uncontradicted testimony of Weinstein and Moss is to be discredited because no vouchers are produced, the balance was made up of cash advanced from time to time. The plaintiff questions the good faith of this transaction: (1) on the ground of the absence of vouchers as to part of the loan, and because the alleged payments were all made to Weinstein; (2) because Moss gave Isekoff general instructions to release lots whenever he should be requested to do so by Weinstein; (3) because when lots were sold no part of the proceeds was required to be paid on the mortgage as a condition of the release. If it had not been satisfactorily shown that the bulk at least of the alleged loan was actually paid over to Weinstein, the absence of vouchers would be a serious ground of suspicion. Again, if there were anything in the record to raise a doubt as to whether the money advanced to Weinstein had been used in the corporate operations, that too would be a ground of suspicion. That Moss was willing to trust his brother-in-law to the extent of directing Isekoff to release lots at the brother-in-law's request, without requiring any part of the proceeds of sale of lots so released to be applied to the payment of the mortgage, is not necessarily inconsistent with the *bona fides* of the transaction. It is not inconceivable that Moss might have been willing to trust his brother-in-law to look after his interest, and to use good judgment and good faith in deciding what, and when, lots could be released without jeopardizing the mortgagee's security. As the very purpose of selling and leasing the released lots was to get money for future operations, of course it could not be well spared at that stage of the operations for the reduction of the mortgage. While a court of equity will at all times lend its aid to defeat a fraudulent transaction, fraud, like any other fact, must be established by satisfactory proof and it will not be presumed. *Riggin v. Robinson,* 117 Md. 81; *Barton v. Bridges,* 126 Md. 676.

The learned chancellor expressly stated that he did not find the mortgage to be fraudulent.

The decree from which this appeal was taken was based on the finding "that the preponderance of the evidence shows that at the time of the execution of the Isekoff mortgage the indebtedness to Moss was not over $3,453.75 and therefore, that the affidavit in the Isekoff mortgage to the effect that there was secured by that mortgage a debt of $5,000 is not an affidavit such as is required by the Code." The chancellor felt constrained for the reason given to strike down the mortgage per force of the decision in *Ressmeyer v. Norwood,* 117 Md. 320. We are unable to agree with the chancellor in his finding of fact, on the record. But even if that finding was, in our opinion, supported by the preponderance of the testimony (and on a charge of fraud the preponderance must be substantial and the weight should be compelling), we would not feel concluded in this case by the decision referred to, as it was based on an entirely different state of facts. It was expressly decided in *Smith v. Myers,* 41 Md. 425, that where the actual amount loaned was $4,400 (the amount named in the mortgage being $5,000), the difference of $600 having been withheld by the mortgagee by agreement with the mortgagor as a bonus for the loan, an affidavit to the truth and *bona fides* of the consideration as set forth in the mortgage was not false swearing, and did not render the mortgage invalid as to third parties. There "the consideration expressed in the mortgage is the indebtedness of the mortgagor *on and by his note* for five thousand dollars, and to the truth and good faith of that consideration as set out the affidavit has reference." As the court explained in that case, the real question is: Does the consideration sworn to represent an indebtedness which the mortgagor in good faith acknowledges and intends to pay? If the mortgage was not fraudulent (and we have held it was not, as did the trial court), then the consideration sworn to was the amount which the mortgagor expected to pay. In *Comegys v. Clarke,* 44 Md. 108, A being indebted to B in the sum of $2,000, gave his note under seal for the amount. Some time afterwards

B told A he would like to have a mortgage on A's wife's property to secure the payment of the note. It appears that the wife of A executed such a mortgage when it was presented to her without reading it or asking any explanation, and without knowing what the paper was. The mortgage stated that the consideration therefor was $2,000 "cash in hand paid." Held, that the consideration proved was not different in character from that stated in the mortgage, and the proof was therefore admissible in support of the consideration stated in the mortgage.

Nor is it material that the debt was due to the mortgagee as agent only, if he in good faith represented the indebtedness to a real creditor and was duly authorized to take the mortgage in his own name. And it is to be noted that both the chancellor and plaintiff's solicitors disclaimed any intention of imputing to Isckoff the slightest want of good faith. 41 C. J. 385, sec. 197 and cases cited in notes.

There is no question here of invalidity on the ground of creating a preference, as there was in *Ressmyer v. Norwood, supra*. The real ground of the decision in that case was that the mortgage was given in the attempt to prefer certain creditors by a scheme based on a secret agreement. In the case at bar, so for as appears from the record, the defendant corporation was entirely solvent at the time the Isckoff mortgage was executed, and there is no reason apparent for the fraudulent execution of such a mortgage. It was given nearly two years before the date of the mortgage to the plaintiff, and the releases referred to were given before the execution of plaintiff's mortgage. If it be true (and as to that there is substantial conflict in the testimony) that officers of the defendant corporation told the plaintiff that its mortgage would be the first lien, that deception could not affect Moss, as neither he nor his agent Isekoff is charged with having any knowlkedge of such deception.

> *Decree reversed and case remanded in order that a decree may be passed in accordance with the opinion, with costs to appellants.*