MULLAN, Executor *v.* MULLAN

[No. 211, September Term, 1959.]

*Decided June 9, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*William L. Wilson,* with whom was *Edward J. Ryan* on the brief, for the appellant.

*Donald W. Mason* and *Morris Baron* for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

Suit was instituted at law by the plaintiff, as executor of his aunt's estate against his brother, the defendant, on six of the common counts and two additional ones. One of the special counts alleged that the plaintiff's decedent had advanced to the defendant $10,200 "in order that the bills of the said Sadie Mullan [the decedent] might be taken care of"; that certain of her bills were paid by the defendant and she thereafter died; and that the executor had made demand upon the defendant to pay him the sum of $10,200, less any sum that had been expended to pay the decedent's bill, but, this, the

defendant failed to do. The other special count stated the plaintiff's decedent had advanced the defendant an additional $2,600 "as a loan," which was to be repaid, but the defendant had failed and refused to repay the same.

Trial was had before the trial judge, sitting without a jury, and the only question raised in this appeal is whether the court was correct in entering judgment in favor of the defendant, which was entered upon a motion equivalent to a motion for dismissal under Rule 565 (though denominated a "motion for a directed verdict") offered at the close of the evidence. See *M. & R. Contractors & Builders, Inc. v. Michael,* 215 Md. 340, 138 A. 2d 350.

The plaintiff's first witness was the defendant, who testified that he and his brother, the plaintiff, were the "surviving heirs" of his aunt, Sadie Mullan. He had taken care of his aunt [who was an elderly woman] since January of 1958 [all dates will refer to the year 1958, unless otherwise noted], when his "other" uncle died. About June 22, she went to the hospital suffering from cancer, and died on August 8. On May 26, she had given him the $2,600 to buy an automobile for himself, and on June 25, she had advanced him $6,199.37 to pay her bills, and, if any were left over, it was to be a gift to him, as he had "signed [upon her admittance to the hospital] to take care of her no matter what happened." At the time of the $6,199 advancement his aunt was in the hospital. Later, she gave him $4,291 as an additional gift. This was a sum of money that she had received from the estate of her brother, and she did not want, for personal reasons, the plaintiff to have any portion of it. He also testified in response to questions from plaintiff's counsel that his aunt was "mentally alert and sound," and competent. He stated that he had paid all of the bills that he knew his aunt owed.

The aunt's will was offered into evidence, and it left her entire residuary estate to the two nephews, equally.

The defendant was then asked by plaintiff's attorney if he did not remember calling at the attorney's office after the death of his aunt and saying that he would "divide the money equally." He replied that he did not, but he did say he was thinking it over, that the money had been a gift to him.

The plaintiff's attorney then took the stand apparently for

the purpose of contradicting the testimony of the defendant. He stated that the defendant had called at his office in response to a request from him to do so, and he had made a "notation" of the conversation that ensued. The notation said that the defendant would divide the money equally; that he would account for "about $10,116.00 less * * * what has been paid out"; and that the defendant said that his aunt had given him $2,600 for a car. The defendant's counsel objected to this testimony and the court struck it out.[1]

The plaintiff then rested his case, and the trial court granted the defendant's motion for a directed verdict in his favor.

The only point raised and argued in the appellant's brief is that the motion for a directed verdict should not have been granted because the evidence disclosed that a confidential relationship existed between the deceased and the defendant and this placed the burden of proof upon the defendant to establish that the actions of his aunt were "free, voluntary and unbiased." The appellee responds by saying that the doctrine relating to confidential relationships relied upon by the plaintiff is appropriate in equity proceedings, but it is not available to a plaintiff in a law suit; that no confidential relationship was in fact established; and that the plaintiff, having called the defendant, an adverse party, and not having impeached or contradicted his testimony, he [the plaintiff] is bound by that testimony.

There can be little doubt that the principle of reversing the ordinary rules of evidence as to the burden of proof after the showing of a confidential relationship is an equitable one. Jurisdiction over fiduciary contracts seems to have originated in the ecclesiastical courts and was taken over by the courts of chancery. Phelps, *Juridical Equity,* Section 8. The rules in equity as to the admissibility of evidence and the competency of witnesses are, in general, the same as at law. One of the important exceptions to this rule is that equity, in its exceptional care of, and solicitude for, the property rights of

---

1. The correctness of the court's ruling upon this evidence is not raised or argued in the appellant's brief; hence that question is not before us. Rule 831 c 2, 4; Comptroller v. Aerial Products, 210 Md. 627, 645.

the weak and confiding against trustees, guardians, other fiduciaries, and persons occupying the dominant position in a confidential relationship, reverses the ordinary rules of evidence as to the *onus probandi* of fraud after a showing of the confidential relationship between the parties to a transaction that is attacked upon the ground of constructive fraud. Phelps, *op. cit.,* Sections 70, 161; Story, *Equity Jurisprudence* (14th Ed.), Sections 370, 430, 431; Pomeroy, *Equity Jurisprudence* (5th Ed.), Section 956; *Lambdin v. Dantzebecker,* 169 Md. 240, 250, 251, 181 A. 353; *Highberger v. Stiffler,* 21 Md. 338, 353, 354. *Cf.* Restatement, *Restitution,* Section 191(2)(d); *Piraino v. Betka,* 218 Md. 548, 557, 147 A. 2d 712; *Shaffer v. Cowden,* 88 Md. 394, 397, 41 A. 786.

We are not called upon here to discuss or determine the nature and extent of the above principle when it is applied by the equity courts, but merely to determine whether the principle of reversing the burden of proof after the showing of a confidential relationship is available to a plaintiff in a suit at law. We have been referred to no Maryland case, nor have we found one, wherein this principle was held available to a plaintiff in an action at law (the rule is possibly different in jurisdictions that have abolished the difference between law and equity). It has been held that the distinction between legal and equitable jurisdiction based upon fraud is that at law fraud must be proved and not presumed; while in equity, after a showing of the existence of a confidential relationship, constructive fraud may be presumed. *Jackson v. King,* 4 Cowen's (N. Y.), 207, 220. *Cf. Lady Ormond v. Hutchinson,* 13 Ves. Ch. Rep. 47, 51. Dean Pound points out that in Anglo-American law the remedies for fraud may be either equitable or legal, *i.e.,* historically in the Court of Chancery or in the common-law courts, and their requirements are not necessarily the same. The remedies in equity are cancellation, rescission and equitable defense; while the remedy at law is the common-law action for damages. 4 Roscoe Pound, *Jurisprudence,* pp. 468, 474. We conclude that a plaintiff in an action at law in Maryland must prove fraud in order to establish his cause of action for damages. *Lynn v. B. & O. R. R. Co.,* 60 Md. 404, 413; *Govane Bldg. Co. v. Sun Mtge. Co.,* 156 Md. 401, 405, 144 A. 486, [an equity case, in which no

confidential relationship was involved, holding that the alleged fraud must be established by satisfactory proof and it would not be presumed] ; *U. S. Fire Ins. Co. v. Merrick*, 171 Md. 476, 491, 492, 190 A. 335.

With the burden of proof upon the plaintiff below to establish the fraud that he contended had been perpetrated, he found himself in the unfortunate position of having offered testimony by an adverse party to the effect that the deceased was mentally alert, sound and competent; that she had given the defendant $2,600 with which to buy a car; and $4,291 because she, for personal reasons, did not want the plaintiff as an individual to have any portion thereof; and that she had advanced him $6,199 with which to pay her bills and any sum that was left over was to be a gift to him, as he had agreed to stand good for her hospital expenses. None of this testimony was contradicted or impeached; consequently, it was binding upon the plaintiff, Code (1957), Article 35, Section 9; *Lehmann v. Johnson*, 218 Md. 343, 349, 146 A. 2d 886; *Maszczenski v. Myers*, 212 Md. 346, 352, 129 A. 2d 109. Compare *Proctor Electric Co. v. Zink*, 217 Md. 22, 141 A. 2d 721. This left him with no evidence to show a breach of duty on the part of the defendant arising out of a contract, either express or implied, 1 M. L. E., Actions, Sec. 24, and warranted the granting of the defendant's motion.

*Judgment affirmed, with costs.*