# EDNA J. FRICK v. NOEL V. MALDONADO

[No. 23, September Term, 1982.]

*Decided August 4, 1983.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*C. Christopher Brown* for appellant.

*William B. Ellinger* for appellee.

SMITH, J., delivered the opinion of the Court.

In this case, because of a later decision of the Supreme Court of the United States, we shall be obliged to overrule our decision in *Thompson v. Thompson,* 285 Md. 488, 404 A.2d 269 (1979), *appeal dismissed,* 444 U.S. 1062 (1980), which upheld the constitutionality of the two-year statute of limitation applicable to paternity actions appearing in Maryland Code (1957, 1973 Repl. Vol.) Art. 16, § 66 (e). It states in pertinent part:

> "Proceedings to establish paternity under the subtitle 'Paternity Proceedings' and to charge the putative father of an illegitimate child ... with their support and maintenance shall be commenced during the pregnancy of the mother thereof or within two (2) years after the birth of such child ... ; except that if the putative father of such child ... has acknowledged in writing the paternity of the child ... or has made payment or otherwise provided for the support and maintenance of the child ... , it is sufficient if the proceedings are commenced within two (2) years of the date of such acknowledgment or the last such payment or provision ...."

The child involved in this controversy was born on August 22, 1978. The paternity proceeding was filed on March 20, 1981. The alleged father pleaded limitations. No evidence was presented indicating that he had "acknowledged in writing the paternity of the child" or "ha[d] made payment or otherwise provided for the support and maintenance of the child ...." In response to the putative father's motion for a directed verdict[1], the Assistant State's Attorney who

---

1. Actually, the motion purported to be made under Maryland Rule 535 which pertains to "any action tried by the court without a jury at law or in equity ...." This case was before a jury. Oddly enough, the signed order purports to be pursuant to Rule 530 which concerns dismissal for lack of

appeared on behalf of the mother pursuant to the provisions of Art. 16, § 66C and Code (1957, 1979 Repl. Vol.) Art. 88A, § 59 (c) argued that the period of limitations "is a denial of equal protection on the part of the child." He referred to *Mills v. Habluetzel,* 456 U.S. 91, 102 S.Ct. 1549, 71 L. Ed. 2d 770 (1982), then pending in the Supreme Court. The motion for a directed verdict was granted. An appeal to the Court of Special Appeals was entered on behalf of the mother. We granted her petition for a writ of certiorari prior to argument in the intermediate appellate court.

The argument presented to us was based upon the concurring opinion of Justice O'Connor in *Mills.* Insofar as we were able to ascertain immediately after argument but three courts had considered the issue since *Mills.* The first was the Court of Appeals of Oregon in *State, ex rel. Adult & Fam. Serv. v. Bradley,* 58 Or. App. 663, 650 P.2d 91 (1982), where that intermediate appellate court affirmed the trial court's determination that the Oregon six-year statute of limitations was unconstitutional, denying the child equal protection of the law. There was a strong dissent in that case based upon its reading of *Mills.* The next case was *Pickett v. Brown,* 638 S.W.2d 369 (Tenn. 1982), upholding a two-year statute. It reviewed a number of pre-*Mills* cases, including *Thompson,* and referred to the fact that the Tennessee statute was similar to Maryland's. The third appellate opinion was *Astemborski v. Susmarski,* 499 Pa. 99, 451 A.2d 1012 (1982), which held constitutional a six-year statute of limitations. (That case has since been vacated and remanded to the Supreme Court of Pennsylvania for further consideration in light of *Pickett, infra.*     U.S.    , 103 S. Ct. 3105, 77 L. Ed. 2d 1360 (1983)).

---

jurisdiction or prosecution. "Jurisdiction" in that instance refers to "[a]n action against any defendant over whom the court has not acquired jurisdiction," with the suit's being subject to dismissal without prejudice as to that defendant at the expiration of one year from the last issuance of original process directed to that defendant. It is obvious that the motion was intended to be under Rule 552 pertaining to an action tried by a jury and permitting a motion "at the close of the evidence offered by an opponent or at the close of all the evidence [] for a directed verdict in his favor on any or all of the issues."

After argument in this case we learned that the Supreme Court had granted certiorari in *Pickett*. Accordingly, we postponed the filing of an opinion until after the Supreme Court's decision in *Pickett v. Brown,* 462 U.S.    , 103 S. Ct. 2199, 76 L. Ed. 2d 372 (1983).

The Court referred in *Pickett* to Tenn. Code Ann. § 36-224 (2) (1977), which reads as follows:

> "(2) Proceedings to establish the paternity of the child and to compel the father to furnish support and education for the child may be instituted during the pregnancy of the mother or after the birth of the child, but shall not be brought after the lapse of more than two (2) years from the birth of the child, unless paternity has been acknowledged by the father in writing or by the furnishing of support. Provided, however, that the department of human services or any person shall be empowered to bring a suit in behalf of any child under the age of eighteen (18) who is, or is liable to become a public charge."

It will be seen that the Tennessee act is similar in content to the Maryland statute. The Court referred to the fact that "[u]nder Tennessee law both fathers and mothers are responsible for the support of their minor children." A similar provision is found in Maryland Code (1957, 1982 Repl. Vol.) Art. 27, § 88 (b) (1).

The Court observed that in *Mills* it considered the constitutionality of a one-year statute of limitations governing suits to identify the natural fathers of illegitimate children. It found that the Texas statute failed to satisfy either of two related equal protection requirements, that the period for obtaining paternal support has to be long enough to provide a reasonable opportunity for those with an interest in illegitimate children to bring suit on their behalf, and that any time limit on that opportunity has to be substantially related to the State's interest in preventing the litigation of stale or fraudulent claims. It pointed out that in

a concurring opinion in *Mills* Justice O'Connor, joined by four other members of the Court, suggested that longer periods also might be unconstitutional.

Justice Brennan said for the Court, "Much of what was said in the opinions in *Mills* is relevant here, and the principles discussed in *Mills* require us to invalidate this limitations period on equal protection grounds." 103 S. Ct. at 2206. The Court then went into a discussion of these various principles. It said the first question is whether the two-year limitations period is sufficiently long to provide a reasonable opportunity to those with an interest in illegitimate children to bring suit on their behalf. It found that for an illegitimate child whose claim is not covered by one of the exceptions in the statute the two-year limitations period severely restricts his right to paternal support.

Inquiry was made as to whether the time limitation placed on an illegitimate child's right to obtain support is substantially related to the State's interest in avoiding the litigation of stale or fraudulent claims. It found a two-year limitations period to be only a small improvement in degree over the one-year period at issue in *Mills.* The exception in the Tennessee statute for the department of human services to bring a suit on behalf of any child under the age of eighteen who is or is liable to become a public charge was found to "seriously undermine[] the State's argument that the different treatment accorded legitimate and illegitimate children is substantially related to the legitimate state interest in preventing the prosecution of stale or fraudulent claims and compel[] a conclusion that the two-year limitations period is not substantially related to a legitimate state interest." The Court pointed out that Tennessee tolls most actions during a child's minority, citing Tenn. Code Ann. § 28-1-106 (1980). We have a similar provision in Code (1974) § 5-201 (a), Courts and Judicial Proceedings Article. It said that "the relationship between a statute of limitations and the State's interest in preventing the litigation of stale or fraudulent paternity claims has become more attenuated as scientific advances in blood testing have alleviated the problems of

proof surrounding paternity actions." Effective July 1, 1982, Maryland Code (1957, 1981 Repl. Vol., 1982 Cum. Supp.) Art. 16, § 66G provides for admission of tests "in cases in which exclusion is not established, if testing was sufficiently extensive to exclude 97.3 percent of putative fathers who are not biological fathers, and the statistical probability of the alleged father's paternity is at least 97.3 percent." Because of its effective date that Maryland statute is not applicable to this case but it does illustrate the point made by the Supreme Court relative to advances in proof.

Justice Brennan concluded his opinion for the Court by stating:

> "The two-year limitations period established by Tenn. Code Ann. § 36-224(2) does not provide certain illegitimate children with an adequate opportunity to obtain support and is not substantially related to the legitimate state interest in preventing the litigation of stale or fraudulent claims. It therefore denies certain illegitimate children the equal protection of the laws guaranteed by the Fourteenth Amendment." 462 U.S.    , 103 S. Ct. at 2209.

It follows, therefore, that *Thompson* must be overruled and the judgment here must be reversed.

*Judgment reversed; appellee to pay the costs.*