OPINION OF THE COURT
Anthony K. Pomilio, J.
This is a paternity proceeding pursuant to Family Court Act article 5 in which petitioner contends that the Statute of Limitations (§ 517 [a]) is unconstitutional.
Petitioner filed a petition in this court on August 27, 1984, alleging that the respondent is the father of the child, Candace Lynn Millson, born out of wedlock on February 24, 1978.
Respondent has moved to dismiss the petition upon the grounds that more than five years have elapsed between the date of the child’s birth and the date the petition was filed and, therefore, the petition is barred by Family Court Act § 517.
Petitioner concedes that the application of Family Court Act § 517 would bar this petition. However, petitioner contends that Family Court Act § 517 is unconstitutional because this statute provides shorter limitation periods for mothers who bring paternity proceedings from that for fathers who bring paternity proceedings and thus denies petitioner equal protection under the law.
*547 The Attorney-General of the State of New York has been notified that the constitutionality of a statute is being challenged, pursuant to Executive Law § 71. However, he has declined to participate.
i
The time within which paternity proceedings must be commenced is governed by Family Court Act § 517. That section provides three separate time periods within which a petition must be commenced. The applicability of the various time periods depends on who the petitioner is. If the petitioner is the mother, and the alleged father has neither acknowledged paternity nor provided support, the period is five years from the child’s birth;* If the petitioner is a public welfare official, the applicable period is 10 years; If the petitioner is the father, the petition may be commenced at any time prior to the child’s 18th birthday. (Family Ct Act § 517.)
The issue is whether section 517 violates the equal protection clause of the United States Constitution.
n
There are two aspects to the equal protection argument. The first is whether the statute impermissibly treats male and female petitioners differently, and the second is whether the statute impermissibly treats legitimate and illegitimate children differently.
in
We address first the different treatment accorded male and female petitioners. Under section 517, a female petitioner has only five years from the child’s birth to commence a paternity proceeding (providing the father has neither acknowledged paternity in writing nor furnished support. Also, if the mother is under 18, the period of limitation begins after she reaches age 18). On the. other hand, a male petitioner has 18 years under all circumstances to file the petition.
In authorizing the imposition of different time limitations for petitioner mothers than for petitioner fathers, the statute provides different treatment on the basis of gender and establishes a classification subject to scrutiny under the equal protection clause. (Orr v Orr, 440 US 268.)
“ ‘To withstand scrutiny’ under the Equal Protection Clause, ‘ “classifications by gender must serve important governmental *548 objectives and must be substantially related to achievement of those objections.” ’ ” (Orr v Orr, supra, p 279; see also, Califano v Webster, 430 US 313.)
Historically, paternity proceedings were a vehicle whereby the mother of a child born out of wedlock could seek support for the child from the alleged father. (Commissioner of Public Welfare v Koehler, 284 NY 260.) Only the mother could commence the proceeding and only the father could be made to pay support.
A finding of paternity gave the adjudicated father no right to seek support from the mother nor any right to obtain custody or visitation. In short, paternity proceedings were solely to obtain support from the father of the child born out of wedlock. They did not determine status and were not binding on the child. (Commissioner of Public Welfare v Koehler, supra.)
The application of different Statutes of Limitation for mothers and for fathers had been justified because the effect of an adjudication of paternity was different for mothers than for fathers.
“Since that relief is to the detriment of the male respondent, it is reasonable to afford him prompt notice of the claim. The male petitioner is in a different position. He is seeking not to encumber the female respondent with new obligations, but to assume a portion of those lawful obligations himself. At least as far as support (the traditional purpose of paternity proceedings; see Commissioner of Public Welfare of City of N. Y. v Koehler, 284 NY 260) is concerned, the male petitioner is proceeding only to his own detriment, not the respondent mother’s. A longer Statute of Limitations is reasonable, not discriminatory, and not constitutionally impermissible.” (Matter of Venus B. v Danillo S., 112 Misc 2d 195,198; see also, Joye v Schechter, 112 Misc 2d 172 [both of these cases involved petitions commenced by the alleged father in which the mother challenged the constitutionality of the longer statute applying to fathers].)
However, changes in the Family Court Act have expanded the rights of the adjudicated father narrowing the distinction between mothers and fathers of such children. Now, either party may commence the proceeding and either party may be awarded custody (§ 549) and either party may be ordered to pay support to the other (§§ 513, 545). The rights of the mother and father are now identical, except as to the period within which these rights may be asserted.
In addition, numerous other rights are now affected by an adjudication of paternity.
*549 “Traditionally, the sole purpose of a paternity proceeding was to establish the father’s obligation to make support payments. A determination of paternity or order of filiation in such proceeding was incidental, did not adjudicate status, and was not binding on the child [citations omitted]. Indeed, where the paternity proceeding was brought by the welfare officials, the mother was not even a necessary party and was not bound by the result of the action [citations omitted]. Thus, if support was not the primary issue, the traditional remedy was to bring a declaratory judgment action in Supreme Court to determine the status of the child and the rights of all interested parties [citations omitted].
“Recent statutory developments and case law have eroded this dichotomy, however. Section 522 of the Family Court Act now provides that a paternity proceeding may be commenced by the mother, by a person alleging to be the father or by a public welfare official. Each of these parties may commence a separate proceeding [citations omitted]. Even if support is not at issue, the mother, the putative father and the child all have an interest in a filiation order because it declares paternity (Family Ct Act, § 542) and establishes rights of inheritance (EPTL 4-1.2, subd [a], par [2]); the right to recover benefits under subdivision 11 of section 2 of the Workers’ Compensation Law and numerous Federal laws; and the right to notice of adoption proceedings (Domestic Relations Law, § 111-a, subd 2, par [a]).” (Matter of Cathleen P. v Gary P., 63 NY2d 805, 807.)
In declaring unconstitutional an Alabama statute which provides that only a husband could be made to pay alimony, the United States Supreme Court wrote: “Legislative classifications which distribute benefits and burdens on the basis of gender carry the inherent risk of reinforcing stereotypes about the ‘proper place’ of women and their need for special protection.” (Orr v Orr, supra, p 283.)
Since the mother and the adjudicated father of a child born out of wedlock have equal rights in relation to their child, this court can find no basis for providing different periods during which each may assert those rights. The State’s interest in avoiding stale or fraudulent claims can be equally served by a gender-neutral statute.
“Where, as here, the State’s compensatory and ameliorative purposes are as well served by a gender-neutral classification as one that gender classifies and therefore carries with it the baggage of sexual stereotypes, the State cannot be permitted to classify on the basis of sex.” (Orr v Orr, supra, p 283.)
*550 IV
We thus conclude there is no justification for providing different Statutes of Limitations for petitioning mothers and petitioning fathers. We are then left with the question of what period of limitation, if any, should apply.
This leads to our analysis of the differences in treatment between legitimate and illegitimate children.
v
Under New York law, both mothers and fathers are responsible for the support of their children who are under age 21 (Domestic Relations Law § 32; Family Ct Act § 413). This same rule applies to children born out of wedlock (Family Ct Act § 545).
This support obligation may be enforced until such time as the child reaches that age.
However, enforcement of this obligation as against the father of a child born out of wedlock must be predicated upon the establishment of paternity (Domestic Relations Law § 32; Family Ct Act § 545).
While a petition for the support of a legitimate child may be filed at any time before the child reaches age 21, a petition for support of an illegitimate child for whom paternity has not been established, must be preceded by a finding of paternity, resulting from a paternity petition filed in all instances prior to that child’s 18th birthday.
“Such a classification based on illegitimacy is unconstitutional unless it bears ‘an evident and substantial relation to the particular * * * interests this statute is designed to serve.’” (United States v Clark, 445 US 23, 27.)
“[Restrictions on support suits by illegitimate children ‘will survive equal protection scrutiny to the extent they are substantially related to a legitimate state interest.’ ” (Pickett v Brown, 462 US 1, 8.)
Determination of whether the statute impermissibly discriminates between illegitimate and legitimate children and thus violates the equal protection clause, requires a twofold inquiry:
(1) Whether the five-year Statute of Limitations is sufficiently long to provide a reasonable opportunity to those with an interest in illegitimate children to bring suit on their behalf; and
(2) Whether the time limitation placed on the illegitimate child’s right to a determination of paternity is substantially *551 related to the State’s interest in avoiding the litigation of stale or fraudulent claims. (Pickett v Brown, supra; Matter of Department of Social Servs. v Thomas J.S., 100 AD2d 119.)
(1) The United States Supreme Court has thus held unconstitutional as violative of the equal protection clause a one-year Statute of Limitations in Mills v Habluetzel (456 US 91) and a two-year Statute of Limitations in Pickett v Brown (supra).
The United States Supreme Court has recently vacated a judgment of the Supreme Court of Pennsylvania approving a six-year Statute of Limitations and remanded the case for further consideration in light of Pickett v Brown. (Astemborski v Susmarski, 462 US 1127, 103 S Ct 3105.)
The Appellate Division, Second Department, has recently upheld a constitutional attack on section 517 (b) which gives the public welfare official a 10-year Statute of Limitations. This attack, however, was brought by a respondent father who contended that the shorter five-year period should be applied. In upholding the constitutionality of the longer provision, that court wrote: “Moreover, the equal protection clause requires that children born out of wedlock be provided with an opportunity to institute paternity proceedings and to establish their right to support that is substantially similar to, although not necessarily coterminus with, the opportunity accorded to legitimate children.” (Matter of Department of Social Servs. v Thomas J. S., 100 AD2d 119, 133, supra.)
That court further cited with approval a decision of the Family Court of New York County which held the five-year period of limitations to be unconstitutional under an attack by a petitioner mother who had, as in the present case, petitioned after the five-year limitation in section 517 (a) had expired prior to the expiration of the 10-year period of section 517 (b). The Family Court wrote: “Subdivision (a) of section 517 of the Family Court Act, as amended by chapter 305 of the Laws of 1983, having been found to bear no substantial relationship to the legitimate State interest in preventing the litigation of stale or fraudulent claims, is declared unconstitutional.” (Matter of Patricia R. v Peter W., 120 Misc 2d 986, 992.)
These decisions indicate that where a disparity exists it is the longer and not the shorter period which should be applied.
(2) The second inquiry is whether the time limitation imposed on petitioner mothers is substantially related to the State’s interests in avoiding the litigation of stale or fraudulent claims.
First, while the State has an interest in preventing the prosecution of stale or fraudulent claims, the 10-year period allowed *552 for children receiving public assistance severely undermines any such argument.
“This difference in treatment is allegedly justified by the State’s interest in preventing the litigation of stale or fraudulent claims. But as the exception for children receiving public assistance demonstrates, the State perceives no prohibitive problem in litigating paternity claims throughout a child’s minority. There is no apparent reason why claims filed on behalf of illegitimate children who are receiving public assistance when they are more than two years old would not be just as stale, or as vulnerable to fraud, as claims filed on behalf of illegitimate children who are not public charges at the same age.” (Pickett v Brown, 462 US, at pp 14-15, supra.)
Second, scientific advances in blood testing have ameliorated many of the problems of proof in paternity cases.
“The State’s purported interest in precluding stale or fraudulent paternity claims has been severely undermined by the advent of the HLA test, by which paternity can be proved or disproved with near certainty regardless of the passage of time since the child’s birth.” (Matter of Department of Social Servs. v Thomas J. S., supra, p 133.)
“Finally, the relationship between a statute of limitations and the State’s interest in preventing the litigation of stale or fraudulent paternity claims has become more attenuated as scientific advances in blood testing have alleviated the problems of proof surrounding paternity actions.” (Pickett v Brown, 462 US, at p 17, supra.)
Third, while the State has an interest in limiting the prosecution of stale claims, there is a countervailing interest in assuring that genuine efforts to establish paternity are not prevented.
“Thus, while the State surely has an interest in preventing the prosecution of stale and fraudulent claims, at the same time it has a strong interest, peculiar to the State itself, in ensuring that genuine claims for child support are not denied.” (Mills v Hahluetzel, 456 US, at p 104 [concurring opn, O’Connor, J.].)
vi
Although we need not now determine whether either the 18-year statute or the 10-year statute is constitutional, we conclude that the 5-year statute is not. Analysis of the above decisions may lead to the conclusion that even the 18-year-old statute may not pass constitutional muster. However, we are not here called upon to make that determination.
*553 While we do not here determine which period is to be applied for paternity cases brought by a mother of an illegitimate child, it is not less than the 10-year period given to public welfare officials. (See, Matter of Patricia R. v Peter W., supra.)
Thus, the present petition, commenced approximately 6Yz years after the birth of the child, which is less than the 10 years permitted by Family Court Act § 517 (b) is here found to be timely commenced.
Respondent’s motion to dismiss is therefore denied and the matter will be scheduled in this court for disposition only.

 Unless the mother is under 18 years, in which event, the five-year period starts from her 18th birthday.