507 A.2d 641

David Ross **PAYNE**

v.

**PRINCE GEORGE'S COUNTY DEPARTMENT OF SOCIAL SERVICES, et al.**

**No. 1133, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

May 7, 1986.

328

Russell P. Butler, Suitland, for appellant.

Nancy B. Shuger, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen. and Joseph B. Spillman, Asst. Atty. Gen. on brief), Baltimore, for appellees.

Argued before WILNER, ADKINS, and BELL (ROSA-LYN B.), JJ.

ADKINS, Judge.

In this case we are asked to determine what statute of limitations, if any, applies to a proceeding for child support brought under what is now Subtitle 10, "Paternity Proceedings," of the Family Law Article. The facts are substantially undisputed. We summarize them.

## Facts

On April 9, 1979, a child, Trevor, was born out of wedlock. On May 9, 1983, appellee, Prince George's County Department of Social Services, filed a paternity proceeding on behalf of Trevor. Named as co-respondents were appellant, David Ross Payne (Trevor's alleged father) and Trevor's mother.[1] The petition alleged, *inter alia,* that public assistance had been paid to the mother and that she had assigned her rights of child support to the State. The relief requested was a finding that Payne was Trevor's father and an order requiring him to pay for Trevor's support and for the mother's medical and hospital expenses in connection with the child's birth.

---

1. According to the petition, Trevor's mother was joined as a respondent because she refused to make oath to the petition. *See* Family Law Art., § 5–1010(f). A similar provision appeared in former Art. 16, § 66B(a).

When the petition was filed, Article 16, § 66(e) was in effect. It provided:

Proceedings to establish paternity under the subtitle "Paternity Proceedings" and to charge the putative father of an illegitimate child or children with their support and maintenance shall be commenced during the pregnancy of the mother thereof or within two ... years after the birth of such child or children; except that if the putative father of such child or children has acknowledged in writing the paternity of the child or children or has made payment or otherwise provided for the support and maintenance of the child or children, it is sufficient if the proceedings are commenced within two ... years of the date of such acknowledgement or the last such payment on provision....[2]

Just short of a month after the petition in this case was filed, the Supreme Court decided *Pickett v. Brown*, 462 U.S. 1, 103 S.Ct. 2199, 76 L.Ed.2d 372 (1983). That decision held unconstitutional, on equal protection grounds, a Tennessee statute which provided for a two year limitation period and was in many respects very similar to Art. 16, § 66(e). On August 4, 1983, some three months after the filing of the petition, the Court of Appeals overruled its earlier decision in *Thompson v. Thompson*, 285 Md. 488, 404 A.2d 269 (1979) and on the authority of *Pickett* declared Art. 16, § 66(e) to be unconstitutional. *Frick v. Maldonado*, 296 Md. 304, 462 A.2d 1206 (1983).

About a year and a half after that, in February 1985, Payne responded to the paternity petition.[3] He denied paternity. He claimed the action was barred by limitations,

---

**2.** In the course of code revision this provision was subsequently re-enacted, without substantive change, as § 5–1006 of the Family Law Art. Ch. 296, Acts of 1984. All of the provisions dealing with limitations in paternity actions were repealed, effective July 1, 1985. Ch. 451, Acts of 1985.

**3.** The delay was caused by the fact that Payne, who had moved before the petition was filed, was not served until January 1985.

citing § 5–1006 of the Family Law Art.; *see* note 2, *supra.* And he claimed the action was barred by laches.

On April 19, 1985, the Circuit Court for Prince George's County (Melbourne, J.) heard Payne's limitations and laches defenses. Judge Melbourne ruled:

> [I]t is the opinion of this Court that a right to be supported by one's parents is a substantive right that belongs to a child and it cannot be waived by either parent nor by the State. They would be depriving children of the right to be supported by their parents.... The two year Statute of Limitations in Maryland is unconstitutional ... and equitable latches [*sic*] ... that's not applicable either....

The determination of Payne's paternity then proceeded on a stipulation of facts which, in addition to other evidence, included a blood test showing a 99.97 percent probability that he was Trevor's father. On May 8 Judge Melbourne signed an order adjudicating Payne to be Trevor's father and ordering Payne to pay $834 in "back support for the minor child" plus $270 for the blood test.[4] This appeal followed.

### Issues

Although Payne states it somewhat differently in his brief, his basic argument is that the three-year statute of limitations provided by § 5–101 of the Courts and Judicial Proceedings Article applies to bar this action, and that a three-year statute of limitations is constitutional in a paternity proceeding. As noted, he also contends that the action is barred by laches.

---

4. No order for future support was made. This was waived on the condition that Payne consent to Trevor's adoption. Payne has not argued that any distinction should be made because we are dealing here with back support as opposed to future support. Nor has he raised the possible applicability or effect of § 12–101 of the Family Law Article (enacted in 1984) which provides: "The court may award child support for a period from the filing of the petition that requests child support."

The Department argues that § 5-101 is not applicable to paternity proceedings, (1) as a matter of legislative intent, (2) because it is a State agency against which limitations does not run, and (3) because 42 U.S.C. § 666(a)(5) preempts it. Additionally, the Department contends that if § 5-101 applies, it is an unconstitutional denial of equal protection, since it would treat illegitimate children seeking support less favorably than similarly-situated legitimate children.

We hold that on the facts of this case, § 5-101 does apply, subject to the tolling provisions of § 5-201. This holding eliminates any equal protection problem and renders it unnecessary for us to address most of the contentions we have summarized. Accordingly, although we think Judge Melbourne's reasoning swept too broadly, we believe her judgment reached the correct result and we affirm it. We explain.

### Limitations

In *Gomez v. Perez,* 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973), the Supreme Court was presented with Texas law under which a father could be judicially required to provide support for a legitimate child but could not be required to do so for an illegitimate child. This was held to be an unconstitutional denial of equal protection of the law because "once a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother." 409 U.S. at 538, 93 S.Ct. at 875.

Texas responded to this pronouncement, but in somewhat grudging fashion. It provided procedures whereby paternal support could be sought on behalf of an illegitimate child, but it further provided that the support action had to be brought within one year of the child's birth. The Supreme Court struck down the one-year limitation period in *Mills v. Habluetzel,* 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed.2d

770 (1982). Relying in part on *Gomez*, Justice Rehnquist explained that a state which grants an opportunity for legitimate children to obtain support also must grant that opportunity to illegitimates. And to survive equal protection analysis, "it is clear that the support opportunity provided by the State to illegitimate children must be more than illusory." 456 U.S. at 97, 102 S.Ct. at 1553. On the other hand, the Court recognized that:

> [t]he fact that Texas must provide illegitimate children with a bona fide opportunity to obtain paternal support does not mean ... that it must adopt procedures for illegitimate children that are coterminous with those accorded legitimate children. Paternal support suits on behalf of illegitimate children contain an element that such suits for legitimate children do not contain: proof of paternity.

*Id.*

Recognizing a state's interest in prohibiting stale or fraudulent claims in light of what it perceived as difficulties inherent in proving paternity, the Court adopted a two-pronged test for application to paternity statutes of limitation:

(1) The period within which suit must be brought by or on behalf of illegitimate children must be sufficiently long to present a reasonable opportunity for those with an interest in the child to assert claims on its behalf; and

(2) Any time limitation placed on that opportunity must be substantially related to the state's interest in avoiding the litigation of stale or fraudulent claims. 456 U.S. at 99–100, 102 S.Ct. at 1554–1555.

The Texas one-year statute flunked both prongs of this test. A one-year period of limitations was an unconstitutional denial of equal protection. What about two years?

That question was answered in *Pickett, supra.* Applying a "heightened level of scrutiny" to the equal protection claim, 462 U.S. at 8, 103 S.Ct. at 2204, and recognizing that "scientific advances in blood testing" have attenuated the

concern with stale and fraudulent claims, *id.* at 17, 103 S.Ct. at 2208, Justice Brennan applied the *Mills* test to Tennessee's two-year statute and found it wanting. As we have seen, in *Frick, supra,* the Court of Appeals followed *Pickett* to strike down Maryland's former two-year statute. Judge Smith, writing for the Court, noted that in Maryland, as in Tennessee, both mothers and fathers are generally liable for child support and that in both states support for legitimate children may be sought throughout their minority. He could discern no significant distinction between the Maryland statute and the Tennessee statute, so the former met the same fate the Supreme Court had meted out to the latter.

Payne is aware of this constitutional history. He accepts the fact that when he filed his plea of limitations, the Maryland two-year statute had been held unconstitutional. He makes no argument that *Frick* should be applied only prospectively in light of the fact that it had not been decided when this paternity action was filed. Thus, we have no occasion to consider the sort of prospective-retrospective analysis discussed in *Linkletter v. Warden,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). Nor need we probe various theories as to what happens to a statute that is declared unconstitutional—is it void *ab initio? Johnson v. State,* 271 Md. 189, 315 A.2d 524 (1974). Is it merely invalid for the future (after the declaration of invalidity)? *Perkins v. Eskridge,* 278 Md. 619, 631, 366 A.2d 21 (1976). Or may it retain some continuing effect for some purposes? *Id.* at 632, 366 A.2d 21.[5] Like Payne, for purposes of this case, we simply accept that when he came before the Circuit Court for Prince George's County there no longer was a viable two-year statute of limitations in paternity cases.

What then? Payne advances the argument that since the specific paternity statute of limitations is no

---

**5.** A part of the *Perkins* decision was overruled in *Parrott v. State,* 301 Md. 411, 426, 483 A.2d 68 (1984) but not its holdings on the points for which we have cited it.

longer with us, we should look to the general statute of limitations contained in § 5–101 of the Courts Article and apply it to this case. That statute provides:

A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced.

We agree with Payne that there is no other "provision of the Code" providing a statute of limitations for paternity cases. And although a paternity action is not "[a] civil action at law" but, rather, an equity proceeding, *Corley v. Moore,* 236 Md. 241, 242, 203 A.2d 697 (1964), *Anderson v. Sheffield,* 53 Md.App. 583, 585, 455 A.2d 63 (1983), an appropriate legal statute of limitations will be applied by analogy in equity. *Villarreal v. Glacken,* 63 Md.App. 114, 127–128, 492 A.2d 328 (1985). The "merger" of law and equity procedures achieved by Md.Rule 2–301 has not affected the viability or the applicability of this doctrine. *See Smith v. Gehring,* 64 Md.App. 359, 373–374, 496 A.2d 317 (1985).

Thus, we hold that § 5–101 applies by analogy to a paternity proceeding in equity. But that is far from the end of the matter. Section 5–101 does not stand in isolation. Its barring effect is or may be limited by other statutes, one of which is § 5–201. Subsection (a) of the latter provision states a legislative policy in favor of tolling the three-year statute during infancy:

When a cause of action subject to a limitation under Subtitle 1 [*e.g.* § 5–101] accrues in favor of a minor ... that person shall file his action within the lesser of three years or the applicable period of limitations after the date the disability is removed.

■ When a paternity action is brought to recover support for an illegitimate child, it seems plain that the action has accrued in favor of the minor. This is true however the action is captioned, as the Department recognized when it filed this petition "on behalf of" Trevor. As the Supreme

Court pointed out in *Pickett,* in considering that under Tennessee law the right to sue was given to the mother (among others):

> It is the child's interests that are at stake. The father's duty of support is owed to the child, not to the mother.... Moreover, it is the child who has an interest in establishing a relationship to his father.... Restrictive periods of limitation, therefore, necessarily affect the interests of the child and their validity must be assessed in that light [statutory citations omitted].

462 U.S. at 16 n. 15, 103 S.Ct. at 2208 n. 15.

That same emphasis on the child's right to support is legislatively established in § 5–1002(b)(1) of the Family Law Article, which states one of the purposes of the Paternity Proceedings Subtitle to be "to promote the general welfare and best interests of children born out of wedlock by securing for them, as nearly as practicable, the same rights to support, care, and education as children born in wedlock." *See Dorsey v. English,* 283 Md. 522, 529, 390 A.2d 1133 (1978). The right to support is, fundamentally, a right of the child, as Chief Judge Gilbert explained in *Powley v. Owens,* 49 Md.App. 349, 352–353, 431 A.2d 749 (1981), and as Judge Wilner suggested in *Green v. Green,* 44 Md.App. 136, 149–150, 407 A.2d 1178 (1979). That is true whether the mother is the named petitioner, as in *Frick,* or whether, as here, the Department, as assignee of the mother, sues on behalf of the child. "Although the Board is a party to the action, [the child's] interest in the determination of his father is of primary concern, and, in this respect, he is the ultimate beneficiary of the action." *Williams County Social Services Board v. Falcon,* 367 N.W.2d 170 (N.D.1985); *see also People in interest of T.L.H. v. F.P.V.,* 701 P.2d 87, 88 (Col.App.1984).

■ Thus, when a paternity action is brought to obtain support for a minor child born out of wedlock, the statute of limitations applicable by analogy in equity is the three-year provision of § 5–101 of the Courts Article, but it is tolled

pursuant to the provisions of § 5–201, as is the case with other causes of action that accrue to the benefit of minors. *See Frick,* 296 Md. at 308, 462 A.2d 1206. *And see Nettles v. Beckley,* 32 Wash.App. 606, 648 P.2d 508 (1982). This holding places Maryland in line with some 28 other American jurisdictions that permit such a proceeding to be brought at any time during the child's minority. *State Legislation on Child Support and Paternity,* Tenn.B.J., Jan.-Feb. 1986 at 20–25. Because of this holding it is unnecessary for us to address Payne's argument that a three-year statute of limitations, without tolling, would be constitutional under *Mills, Pickett,* and *Frick.* Nor need we consider any of the alternative bases for affirmance asserted by the Department. Since Trevor was a minor when this action was brought, the statute is tolled as to him. Judge Melbourne did not err in rejecting Payne's limitations defense.[6]

---

**6.** By this holding we do not mean to approve or disapprove Judge Melbourne's conclusion that the State may *never* impose a paternity statute of limitations that bars a child support proceeding short of the age of majority. Such statutes have been held constitutional. *Astemborski v. Susmarski,* 502 Pa. 409, 466 A.2d 1018 (1983) (six-year statute valid); *Wolfe v. Geno,* 134 Mich.App. 433, 351 N.W.2d 316 (Mich.App. 1984) (six-year statute valid). In neither *Mills* nor *Pickett* did the Supreme Court totally foreclose the possibility of such statutes. It has not passed on the merits of the issue since *Pickett. See, e.g., Paulussen v. Herion,* — U.S. —, 106 S.Ct. 1339, 89 L.Ed.2d 521 (1986) (judgment sustaining Pennsylvania six-year statute vacated and case remanded for further consideration in light of Pennsylvania's statutory change to limitations period of 18 years from birth); *Daniel v. Collier,* 464 U.S. 805, 104 S.Ct. 53, 78 L.Ed.2d 72 (1983) (judgment upholding six-year statute vacated and case remanded for further consideration in light of *Pickett* ). We note, however, that a number of states have held unconstitutional paternity statutes of limitations of varying lengths. For example, three-year statutes were invalidated in *Commonwealth ex rel. Lepard v. Young,* 666 S.W.2d 735 (Ky.1983), *State ex rel. S.M.B. v. D.A.P.,* 284 S.E.2d 912 (W.Va.1981), and *Moore v. McNamara,* 40 Conn.Supp. 6, 478 A.2d 634 (1984); four-year statutes in *State Dept. of Health and Rehabilitative Services o.b.o. Gillespie v. West,* 378 So.2d 1220 (Fla.1979), and *In the interest of Smith v. Cornelius,* 665 S.W.2d 182 (Tex.App.1984); a five-year statute in *Millson v. Manfredo,* 128 Misc.2d 546, 490 N.Y.S.2d 446 (N.Y.Fam.Ct.

## Laches

 Payne also argues that this proceeding is barred by laches. That doctrine may be applied, in equity, to bar an action even though less time has elapsed than that required to invoke an applicable statute of limitations. For the successful use of laches, however, more than the mere passage of time must be shown; the party relying on laches must demonstrate both lack of diligence on the part of his or her opponent, and prejudice to the relying party by reason of the delay. *Smith v. Gehring*, 64 Md.App. at 370, 496 A.2d 317.

 Whether laches applies at all in a paternity proceeding for child support may be questioned. An infant who cannot legally bring suit himself or herself can scarcely be accused of lack of diligence. As Judge Wilner aptly pointed out in *Green v. Green*, 44 Md.App. at 150, 407 A.2d 1178 (a suit involving laches in the context of support for legitimate children), "[I]t is one thing to penalize a person for sitting too long on his own rights; it is quite another to penalize him because someone else sat on those rights." *See also Nettles v. Beckley, supra.* Nevertheless, in *Green* we did consider on the merits (and reject) the application of laches. And in *Howell v. Brummell*, 293 Md. 646, 446 A.2d 1149 (1982), the Court of Appeals considered on the merits (and rejected) the application of laches in a paternity case. Assuming that the doctrine of laches is available to Payne, we shall focus here on the question of whether there is any indication on this record of prejudice to him by the delay in bringing the instant proceeding.

---

1985); and a six-year statute in *Oregon ex rel. Adult and Family Services Div. v. Bradley*, 58 Or.App. 663, 650 P.2d 91 (1982).

· We also note that we have not decided what statute, if any, might be raised to bar a mother's action for medical and hospital expenses for pregnancy under § 5–1033(a)(2) of the Family Law Article or one for the funeral expenses of the child under § 5–1033(a)(3). *See Doak v. Milbauer*, 216 Neb. 331, 343 N.W.2d 751, 753 (Neb.1984). We deal here only with a proceeding for child support and an order for that support under § 5–1003(a)(1) (*see* former Art. 16, § 66H).

At the hearing below, Judge Melbourne summarily rejected Payne's laches defense. At that time Payne proffered nothing that would remotely suggest delay-caused prejudice to him. At oral argument in this court, we asked his lawyer what evidence of prejudice there might be, such as witnesses unobtainable or evidence lost because of delay. Counsel's only response was to point to Trevor's mother's answers to certain interrogatories. These answers said merely that the mother could identify only one doctor who had cared for her or Trevor, and that the only document she had relating to Trevor's birth was a hospital bill. There is nothing here that in any way suggests that Payne was hindered in the presentation of his defense by missing witnesses or lost evidence. Indeed, the factual aspects of the case were presented to Judge Melbourne by stipulation. There is nothing in the record in this case to support Payne's claim of laches. Judge Melbourne was correct in rejecting it.

JUDGMENT AFFIRMED. APPELLANT TO PAY THE COSTS.