566 A.2d 808

The SOUTHERN FOUR, INC.

v.

PETER PARKER, P.A.

No. 473, Sept. Term, 1989.

Court of Special Appeals of Maryland.

Dec. 6, 1989.

---

Thomas E. Marshall and Kimberly E. Kahoe (Stark & Keenan, P.A. on the brief), Bel Air, for appellant.

Lee Saltzberg, Towson, for appellee.

Argued before WILNER, ALPERT and CATHELL, JJ.

CATHELL, Judge.

The appellee, Peter Parker, P.A., filed suit in the Circuit Court for Baltimore City against appellant to recover legal fees for services rendered in respect to a matter described in its complaint as *Southern Four, Inc. v. Zoning Commissioners for Baltimore County et al.* In the case at bar, the trial court rendered judgment for appellee but imposed a condition precedent on appellee's rights to enforce the judgment. Appellant appealed. There was no cross appeal.

■ Before proceeding to the main issues we must first address appellee's motion to dismiss and appellant's response thereto.

The docket entries below show an entry on 1–23–89 which states as follows: "Judgement in favor of the Pltf for $10,000 Ward Cost to Deft. Ward." Another entry on the same date states: "Order to be signed. Ward, J."

On 2–2–89 a docket entry was made stating "Deft (Southern Four) Motion to alter or amend Judgment, memo & statement of Points & authorities fd."

On 2–6–89 the docket reflects the following entry:

Order of Court that Judgment be and hereby is entered against deft., The Southern Four, Inc. in the amount of $10,449.14 plus court costs and that Pltff. is stayed from enforcing said judgment, except for $449.14 which is not stayed fd. (Ward, J.)

On 2–28–89, the following was entered on the docket: "Order of Court 'Denying' Motion to Alter or Amend Judgment (Ward, J.)." The appellant's notice of appeal was docketed on 3–17–89.

In the motion to dismiss the appellee asserts that the appeal should be dismissed because it was filed more than 30 days after Judge Ward's February 6, 1989, order. Appellee claims that the appellant's motion to alter or amend was void *ab initio* and of no force and effect because although it was filed after the initial docket entry of judgment on 1–23–89, it was filed before the second docket entry of judgment filed on 2–6–89 and, therefore, it did not stay the running of the 30–day period in which appeals must be taken.

Maryland Rule 2–601(a), Entry of Judgment, provides that upon a court decision for a specified amount of money "the clerk shall forthwith enter the judgment, unless the court orders otherwise." Maryland Rule 2–601(b) provides that a judgment shall be entered "by making a record of it in writing ... or on a docket within the file, or in a docket book, ... and shall record the actual date of the entry. That date shall be the date of the judgment."

The transcript of the January 23, 1989 proceedings below indicates that the trial judge stated:

But the bill I am going to order to prevent future litigation. I am going to make a finding as to the amount of the bill.

\* \* \* \* \* \*

Therefore, judgment in favor of the plaintiff in the amount of $10,000. However, in the order, the judgment cannot be enforced until further hearing or proof of mining and a positive cash flow as a result of mining, not from any other source."

\* \* \* \* \* \*

I am going to assess the costs against the defendant. The clerk then made the docket entry we have set out above.

A final appealable judgment is one that settles the parties' rights or finally concludes the case and is entered on the docket. The judgment first entered on the docket was not qualified in any sense. It was an unqualified entry of judgment and it was instantly appealable. The subsequent entry of the duplicative judgment did not affect the appeal period. Appellant's subsequent filing of its motion to alter or amend the judgment pursuant to Maryland Rule 2–534 was timely filed and it stayed the running of the appeal period until a ruling was made. Maryland Rule 8–202(c). Accordingly, the notice of appeal was timely filed. Appellee's motion to dismiss is denied.

On appeal appellant presents five questions:

1.  Did the lower court err in denying Southern's motion to dismiss based on improper venue?

2.  Did the lower court err in dismissing Appellant's motion to dismiss based on the statute of limitations?

3.  Did the lower court err in finding that a conviction for tax perjury under 26 U.S.C. § 7206(1) (1954) does not disqualify a party from testifying pursuant to Md.Cts. and Jud.Proc.Code Ann. Section 9–104 (1984)?

4.  Did the lower court err in granting a conditional judgment?

5.  Is the lower court's judgment supported by the facts and testimony?

We primarily address the fourth and fifth questions—those of whether the trial court's decision was supported by

the evidence and whether the trial court erred in granting a conditional judgment.

■ While the parties disagreed as to the contingent nature of the fee arrangement, they did agree, albeit for different reasons, that whatever fee was due was not due until appellants had a positive cash flow from mining of certain property—a factor that had not yet occurred. Appellant claims that the positive cash flow provision means it does not yet owe the bill. Appellee says the provision means that the statute of limitations has not yet run because the condition placed on the payment of his fees removes it from the general rule which provides that fees for services are due either when the services are performed, or when they are completed.

The trial court, in essence, attempted to do the impossible, that is, to find for both parties, and to base that finding on the same provision by accepting, inexplicably, each party's conflicting interpretation of the meaning of the provision. In so doing, it rendered a judgment completely inconsistent with its own stated findings; a judgment on an unmatured cause of action. Either recognizing, or being confused by, what it was doing, it attempted to justify its actions by also imposing a condition on the enforceability of the judgment.

We need not attempt to unravel further the trial court's actions. We need only address its finding and judgment.

The trial court stated: "That's what I find. In fact, that Mr. Parker and Mr. Stancill agreed that there would be no payment until there was a mining of this property." The evidence was clear that there had been no mining on the property and thus there had been no cash flow as a result of the mining. The trial court, itself, so acknowledged when it rendered judgment stating: "[T]he judgment cannot be enforced until further hearing or proof of mining and a cash flow as a result of mining. . . ."

The trial court thus found that no payment was due. Accordingly, the cause of action had not yet accrued and

the court was in error in rendering judgment based upon a debt and action that did not yet exist.[1]

49 C.J.S. *Judgment* § 20 (1947), entitled "Matured Cause of Action", provides in part:

> It is essential to the validity and regularity of a judgment that the demand whereon it is rendered shall have existed as a matured cause of action at the time the action was commenced.

As early as 1841 the courts of this State held that contract causes of action must generally mature before they may be subject to suit. It was said in *Keirle et al. v. Shriver*, 11 G & J 405, 406 (1841), that

> The judgment below was liable to arrest on more grounds than one. The verdict was not only liable to objections on the ground that it was founded on a count in the declaration, insufficient in law to warrant any judgment thereon, but it found a fact which did not entitle the plaintiff to a judgment, even if the declaration had been unexceptionable.

Somewhat more recently, the Court of Appeals restated the necessity for maturity of causes in *Phelps v. Herro*, 215 Md. 223, 137 A.2d 159 (1957), which involved an action on a note. The court said:

> It will be noted suit was filed December 7, 1956, and the next instalment [sic] of $5,000 was not due under the contract until January 1, 1957. It is well settled and familiar law that a cause of action must be ripe at the commencement of the suit and the non-existence of a cause of action at that time is fatal to the right to recover; therefore it would be superfluous to cite authori-

---

**1.** In view of our holding, we expressly do not dispose of any question of limitations or of the effect on the collectability of attorneys fees in causes of action filed more than three years after the termination of an attorney-client relationship resulting from a disbarment. Additionally, the decision we render, in effect, nullifies any findings made by the trial court as to amounts, times the services were rendered, etc. The trial court decision, in light of our ruling, can have no res judicata effect in any future proceedings.

ties in support of the proposition. *Id.* at 227–28, 137 A.2d 159.

\*    \*    \*    \*    \*    \*

From what we have said above, we conclude this case was prematurely brought, so the judgments must be reversed. *Id.* at 233, 137 A.2d 159.

While it should be unnecessary, we specifically state the obvious, and hold that a judgment cannot be rendered until such time as its underlying prerequisite, i.e., a cause of action, exists.[2]

In the present case even if the cause of action had accrued the judgment rendered was improper in that it was an impermissible conditional civil judgment.

We point out that the adoption in 1984 of the new Maryland Rules of Procedure did not abrogate the substantive distinctions between law and equity.

The minutes of the Rules Committee of March 7–8, 1980, at 33 reflect that what was intended was the removal of the distinctions in pleading.[3]   Our current Rule 2–301, which provides that "[t]here shall be one form of action known as 'civil action,'" was directly derived from Fed.R.Civ.P. 2. The Federal Rules have not abolished the substantive distinction between law and equity, as indicated by the decision of the Fifth Circuit Court of Appeals in *Bradley v. U.S.*, 214 F.2d 5, 7 (5th Cir.1954), where that court stated:

The federal rules of civil procedure abolished all distinctions as to form between actions at law and suits in

---

**2.**  The facts in the case at bar distinguish it from that line of cases decided under the theory of anticipatory breach of contract. The Court of Appeals in *Phelps, supra* 215 Md. at 229, 137 A.2d 159 also made that distinction "... with reference to ... contracts that have become unilateral by full performance on one side, for the payment of money in the future, ... (the situation in this case when suit was instituted), the text writers and decisions are in general accord that the doctrine of anticipatory breach has no application."

**3.**  All citations to minutes of Rules Committee meetings within this Opinion were extracted from *Commentary On The New Maryland Rules Of Civil Procedure,* 43 Md.L.Rev. 4, 742–43 (1984).

equity, but they did not abolish the difference in substance between legal and equitable remedies. . . . The substantial difference between law and equity, and between legal and equitable remedies, still exists.

The Rules Committee minutes of March 7–8, 1980, also reflect that the committee "agreed that the interest was not to disturb ... the distinction between law and equity."

Whether the distinction between equity and law has been extinguished by the merger of the procedural rules was addressed in *Payne v. P.G. Co. Dept. of Social Serv.*, 67 Md.App. 327, 335, 507 A.2d 641 (1986), where we said:

> We agree with Payne that there is no other "provision of the Code" providing a statute of limitations for paternity cases, and although a paternity action is not "[a] civil action at law" but, rather, an equity proceeding, an appropriate legal statute of limitations will be applied by analogy in equity. The "merger" of law and equity procedures achieved by Md.Rule 2–301 has not affected the viability or the applicability of this doctrine. [citations omitted]

In *Smith v. Gehring*, 64 Md.App. 359, 370–72, 496 A.2d 317 (1985), we said:

> We hold that neither Md.Rule 2–301, nor Md.Rule 2–323(g), nor any combination of them makes the doctrine of latches available as a defense to a purely legal claim. . . . Those purposes do not extend ... to a legal claim as opposed to an equitable claim. The "merger" of law and equity was not intended to abolish all differences between legal and equitable claims and defenses to them, but only to abolish "[p]leading distinctions between law and equity" and "to assure that [a]ll claims and defenses are determined in one court." [citation omitted]

Accordingly, this contract action is a civil action at law in the historical sense, and is governed by law, not equitable principles.

■ 49 C.J.S. *Judgment* § 73 (1947), entitled "Conditional Judgments", provides in part on pages 192–93:

It is a general rule that judgment must not be conditioned on any contingency, and it has been held that a conditional judgment is wholly void.

49 C.J.S. *Judgments*, § 21 (1947), entitled "Definitiveness", states:

A judgment must be definitive. By this is meant that the decision itself must purport to decide finally the rights of the parties on the issue submitted, by specifically denying or granting the remedy sought by the action.

The trial court in the case at bar in its written order after entering judgment stated:

[T]hat the plaintiff is stayed from enforcing said judgment ... pending the extraction of any minerals from defendant's property resulting in a cash-flow to the defendant. *Should the parties be unable to agree as to whether a cash-flow has been generated, this court will hold a hearing on said issue upon the request of the plaintiff.* [emphasis added]

We are unaware of any statute or case law in Maryland that permits a judge in an action at law, as opposed to a chancellor in equity, *to retain continuing jurisdiction* to hold future hearings to determine whether a condition, that may or may not ever occur in the future, has or has not occurred. Appellee cites no such authority other than "the order is entirely consistent with literally hundreds of orders entered in other proceedings in the State of Maryland, including orders entered in domestic relation cases." We doubt that in Maryland there are hundreds of such orders in law cases. We hope not. We note that the "domestic relations cases" appellee refers to are equity matters clearly distinguishable from the breach of contract law case before us.

We believe that the opinion and decision rendered by the Missouri Court of Appeals in *Wallace v. Hankins*, 541 S.W.2d 82, 84 (Mo.Ct.App.1976), cited by appellant, correctly states the law. In that case, the Missouri court stated:

A conditional judgment or decree is one whose enforcement is dependent on the performance of future acts by a litigant and is to be annulled if default occurs. An alternative judgment or decree is for one thing or another but does not declare in a definitive manner which alternative will ultimately prevail. Conditional and alternative judgments and decrees are wholly void as they do not perform in praesenti and leave to speculation and conjecture what their final effect may be. In other words, under conditional or alternative judgments and decrees, the final resolution of the cause is consigned to the accomplishment vel non of future acts whose actual performance or nonperformance are matters dehors the record. [citations omitted]

In *Burger v. Burger*, 481 S.W.2d 632, 634 (Mo.Ct.App. 1972), an equity case in which the chancellor held that the payment of alimony was conditioned upon defendant's failure to pay outstanding bills, the appellate court, in reversing, held that "a final conditional decree, one that does not operate in praesenti, but is to become operative on the occurrence of some condition, is void." [citations omitted]

The Supreme Court of Iowa in *Williams v. Bourne*, 248 Iowa 189, 79 N.W.2d 751, 753 (1956), said:

We are satisfied that as a general rule final judgments must not be conditional, and unless there is an equitable phase of the action where it is necessary to protect the interest of defendants, such a conditional judgment is wholly void. [citations omitted]

It is hard for us to imagine any judgment that could be more speculative and more subject to conjecture than the one we are now addressing. What, for instance, does the trial judge mean when he says mining? What is meant by cash flow from mining? What if no mining ever occurs? What if appellant's sell the property to an entity who buys it for non-mining purposes? Is the purchase price in such event the cash flow from mining or the extraction of minerals? What if none of the present parties exist at the time minerals are extracted?

The result of the entry of such a conditional judgment creates an equally illogical result. If appellants choose to sell the property to a residential developer, what do they do about the judgment? The trial court has said that it is not yet enforceable—but it is there. Any developer would require it to be removed and any subsequent purchasers in the development would require it to be removed. It would in fact, have to be satisfied even though by court order it is unenforceable. The distinction, if any, is without a difference.

We, therefore, additionally hold that generally, in law, conditional judgments are not favored and we specifically hold, under the facts of this case, that a judgment in a case at law for money damages for breach of contract conditioned upon the happening of an uncertain speculative future event, is a nullity and thus void.

For the two reasons we have stated, we reverse.

JUDGMENT REVERSED; MOTION TO DISMISS APPEAL DENIED; COSTS TO BE PAID BY APPELLEE.