573 A.2d 392

**Nathaniel T. OAKS**

v.

**STATE of Maryland.**

**No. 1335, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

May 10, 1990.

2

Michael D. Montemarano, Assigned Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

**4**

Mary Ellen Barbera, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Stuart O. Simms, State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Argued before GILBERT, C.J., and BLOOM and CATHELL, JJ.

GILBERT, Chief Judge.

Nathaniel Oaks, then a member of the House of Delegates of the Maryland General Assembly for the 41st District in West Baltimore City, was charged with theft of over $300.00, perjury, failure to file a campaign report, and misconduct in office. Oaks was indicted by two separate grand juries. The charge of theft over $300 was handed up by the Baltimore City Grand Jury. The other three charges were brought by the Grand Jury for Anne Arundel County. On motion by Oaks, the Anne Arundel County charges were removed to Baltimore City where all four charges were tried together, before a jury in the Circuit Court for Baltimore City, which convicted Oaks. As a result, he was, by operation of law, removed from public office.

In this Court Oaks raises a multitude of issues, assailing the judgments of the circuit court. We shall reverse the perjury and failure to file campaign report convictions but affirm the theft and misconduct judgments. The net result to Oaks remains the same.[1]

The charges arose out of incidents which occurred over a three year period during which Oaks received monetary advances for the same expenses from both his campaign committee and the State of Maryland in order to pay hotel and travel expenses and bills for office supplies. In short,

---

**1.** Oaks was sentenced to five years imprisonment for the theft of over $300.00, fined $1,000.00, and ordered to perform 500 hours of community service; three years for misconduct in office; one year for perjury; and six months for failure to file a campaign report. All sentences of imprisonment, ordered to be served consecutively, were suspended; and Oaks was placed on probation for a period of three years.

Oaks was paid twice: once by his campaign committee and once by the State. The total sum thus received by Oaks was $10,000.

We shall discuss each issue raised in the order in which Oaks posited them to us. Further facts will be added, as necessary, to better understand a particular matter.

## I.

"Whether the trial court erred in not dismissing the charges involving alleged violations of Article 33, as they involved an improper prosecution under inapplicable law."

■ Oaks contends that the State Election Code, Md.Ann. Code art. 33, is vague, unclear, and, therefore, unconstitutional. He notes that the Nilson Report [2] contains commentary on that issue. Oaks does not articulate any reasons, other than the Nilson Report, as to why the vagueness and ambiguousness assertion should be accepted by this Court. Furthermore, Oaks does not refer to any specific sections of the Code that are allegedly void for vagueness but rather points to the entire Article 33. We decline to address the issue since Oaks makes no argument in support of his position. Mere reference to the Nilson Report simply will not suffice. Md. Rule 8–504(a)(5); *Kammer v. Young*, 73 Md.App. 565, 577–78, 535 A.2d 936 (1988); *Van Meter v. State*, 30 Md.App. 406, 352 A.2d 850 (1976).

## II.

"Whether Appellant could, as a matter of law, have committed the alleged violations of Article 33."

■ The issue is imprecisely framed. The question should ask whether Oaks, as a matter of law, violated

---

2. "The Nilson Report," more properly designated "Report of the Governor's Commission to Review the Election Laws," received its informal name because the chairperson of the Governor's Commission was George A. Nilson, Esq. Governor Harry R. Hughes appointed the Commission in December 1985. The Commission submitted its report on January 19, 1987.

sections 26–11 and 26–15 of Article 33. For the reasons hereafter stated, we hold that Oaks, as a matter of law, did not violate those two subsections, and for that reason we reverse the perjury and failure to file campaign report convictions.

Md.Ann.Code art. 33, § 26–11(a) provides for the filing of a "statement of contributions and expenditures." Section 26–11(b) provides: "It is the responsibility of the candidate and treasurer, jointly and severally, if it is the statement of the candidate, and the *chairman and treasurer, jointly and severally, if it is the statement of a committee,* to file all reports or statements in full and accurate detail." (Emphasis supplied.)

Section 26–15 provides:

"Any wilfully false, fraudulent, or misleading statement or entry made by any candidate for office, treasurer, or subtreasurer, or by any member or officer of any political committee, in any statement or account under oath *as required by this article,* shall constitute the crime of perjury, and be punishable as such according to the laws of this State." (Emphasis supplied.)

The campaign fund report upon which Oaks was convicted of perjury was submitted by a campaign committee styled as "Friends of Nat Oaks." The report was signed by Oaks as the candidate and by Ronald Dillard as treasurer. The campaign committee chairperson did not sign the report. It should have been, but was not, rejected by the State Administrative Board of Election Laws as an improperly verified report. Patently, under the provisions of § 26–11(b), Oaks was not a proper person to sign and attest to the authenticity of the report. His signature thereon was a nullity, as was the report itself since it was not signed by the persons the law requires to sign it. Oaks could not be convicted of perjury under § 26–15 because the campaign report submitted by Oaks and Dillard was not "a statement or account ... required by ... [art. 33]."

As a matter of law the trial judge should have granted a judgment of acquittal on the perjury count. Even though the report submitted by Oaks and Dillard was false, its falsity was immaterial since the report as submitted was not required by § 26–11. It is stated in R. Gilbert and C. Moylan, *Maryland Criminal Law: Practice and Procedure*, § 9.2(3) that statutory perjury is committed when there is a "[w]ilful false swearing in an affidavit required to be filed with a report or return to the General Assembly or any officer of the government."

The Oaks–Dillard report was, as we have said, not required. Hence, even though Oaks may have made a false affidavit, he did not commit statutory perjury. Additionally, he did not commit common law perjury because to do so the false statement must be "both false and material to the issue." If the statement be false and immaterial, there is no perjury because the issue, i.e. the campaign committee report, is not affected. Gilbert and Moylan, *supra*, § 9.1.

■ The campaign committee's report that was not filed and which resulted in Oaks's conviction for failure to file concerned a report of "Friends of Nat Oaks." Md.Ann. Code art. 33, § 26–11(b) makes transpicuous that the chairman and treasurer respectively of that campaign committee were the persons who should have filed the report. Oaks was not chairman nor, as we have seen, was he the treasurer. Hence, he was not one of the two persons required to file the report. The charge was improperly laid against him.

### III.

"Whether the trial court erred in failing to instruct the jury correctly as to the requirements of Article 33 ... and further erred in permitting the jury to determine the nature and scope of the provisions of Article 33."

The thrust of Oaks's argument is that the trial judge should not have allowed the jury to interpret the election

law insofar as it concerned perjury and the failure to file a campaign report. The judge instructed the jury:

"I also ... [instruct] you that, if there are conflicting interpretations of the law, you, the jury, ... [serve] as the final judges of both the law and the facts. One such area of conflicting interpretations is the election laws. When you consider the election laws[,] more particularly the crimes of perjury under the election laws and failure to file campaign fund reports, my instructions are a guide and advisory only and are not binding upon you. It is your responsibility to resolve the conflicting interpretations of the law and for you to decide the applicability of the law to the facts of this case."

Admittedly, no exception was taken to the judge's instruction. Although we may take cognizance of plain error material to the rights of the accused, *see Franklin v. State,* 319 Md. 116, 571 A.2d 1208 (1990), and *Vernon v. State,* 12 Md.App. 157, 163, 277 A.2d 635 (1971), we need not do so in the instant case because the challenged portion does not concern the theft count, and we have already held that the trial judge erred in not taking the perjury and failure to file campaign report charges from the jury.

## IV.

"Whether the trial court erred in failing to instruct the jury ... as to stipulated evidence concerning Article 33...."

█ Specifically, Oaks focuses his attack upon the trial judge's declination to instruct the jury with respect to the Nilson Report[3] and the requirement of Article 33 concerning reimbursement.

The difficulty with Oaks's assault on the failure to so instruct is that it is made in one broadly worded sentence: "This error was compounded by the trial court's failure to properly instruct the jury as to the requirements of Article

---

3. *See* n. 2, *supra.*

33, particularly concerning the requirements as to reimbursement." Because no argument is made in the brief in support of Oaks's position, we decline to address it. Md. Rule 8–504(a)(5); *Kammer v. Young, supra; Van Meter v. State, supra.*

## V.

"Whether the trial court erred in permitting a state investigator to be qualified and to testify as an expert witness in the field of accounting."

Oaks contends that Marcelius Ferrer, an accountant employed by the State Prosecutor, should not have been permitted to testify as an expert since he had limited knowledge which had no relation to election law accounting practices. We observe that Ferrer had previously testified as an expert in different courts in this State eleven times. He was qualified as an expert in accounting, although not in the area of campaign financing.

As stated by the Court of Appeals in *Raithel v. State,* 280 Md. 291, 301, 372 A.2d 1069 (1977): "[T]he admissibility of expert testimony is a matter largely within the discretion of the trial court, and its action in admitting or excluding such testimony will seldom constitute a ground for reversal." *See also Bohnert v. State,* 312 Md. 266, 276, 539 A.2d 657 (1988); *Bloodsworth v. State,* 307 Md. 164, 185, 512 A.2d 1056 (1986); *Radman v. Harold,* 279 Md. 167, 173, 367 A.2d 472 (1977); *Cirincione v. State,* 75 Md.App. 166, 176, 540 A.2d 1151 (1988). The exercise of the trial court's discretion is reviewable on appeal, *Bloodsworth,* 307 Md. at 185, 512 A.2d 1056, and may be reversed if there is 1) an error of law, 2) a serious mistake, or 3) an abuse of discretion. *Id.* at 186, 512 A.2d 1056.

In the instant case, the trial judge had determined that Ferrer's accounting expertise would be of assistance to the jury in tracking the "paper trail" of campaign contributions, checks, vouchers, and other allied paper documents. We are unable to say that the determination was wrong. It

follows therefore that we perceive no error of law, serious mistake, or abuse of discretion in the court's permitting Ferrer to testify as an expert.

### VI.

"Whether the trial court erred in permitting a witness to testify as to facts not in evidence, and to make suppositions concerning hypothetical situations."

█ A major assault is mounted by Oaks upon the testimony of Ronald Dillard, the treasurer of the campaign committee "Friends of Nat Oaks."

Oaks argues that Dillard's "wholly speculative" testimony should not have been allowed. To set the matter in proper perspective, we must examine the State's theory with respect to the charge of theft of over $300. The State, as the assistant attorney general Barbera's brief points out, theorized that Oaks deceived Dillard into reimbursing him out of the treasury of "Friends of Nat Oaks" for expenses for which Oaks had previously been or would be reimbursed by the State. To demonstrate the deception practiced by Oaks upon Dillard, the State repeatedly asked whether, if he knew Oaks was going to receive reimbursement from the State, he, Dillard, would have given Oaks blank checks to cover those same expenses. Over objection, Dillard responded that he would not have done so.

We think the trial judge properly allowed the questions put to Dillard to show that the latter was deceived into giving checks to Oaks to cover expenditures for which he had already been or would be reimbursed by the State. The questions and answers were, as the State argues, directly relevant to the crime of theft. *See* Md.Ann.Code art. 27, § 342(b).

### VII.

"Whether the permitted testimony [of Dillard] amounted to the admission of uncorroborated accomplice testimony,

which cannot be permitted absent some measure of corroboration."

■ Oaks endeavors to have Dillard's testimony rejected on the ground that the latter was an accomplice. The issue was not raised and decided in the trial court and is improperly before us. Md. Rule 8–131(a). We do not consider it.

### VIII.

"The State Prosecutor was without authority either to investigate the charges against appellant, or bring them before the grand jury, and accordingly the prosecution must be set aside."

■ This last issue was raised by Oaks in his reply brief, not his original brief. "The function of a reply brief is limited. The appellant has the opportunity and duty to use the opening salvo of his original brief to state and argue clearly each point of his appeal. We think the reply brief must be limited to responding to the points and issues raised in appellee's brief." *Federal Land Bank v. Esham,* 43 Md.App. 446, 459, 406 A.2d 928 (1979).

Inasmuch as the issue raised for the first time in Oak's reply brief was not raised in his original brief and because it does not reply or respond to any matter argued by the State, we refuse to address it.

We observe that Oaks did not discuss the charge of misconduct in office nor allude to it in his brief or oral argument. Since he apparently abandoned that issue, we shall not consider it.

JUDGMENT ON INDICTMENT NO. 18816517 (THEFT OF OVER $300.00) AFFIRMED; JUDGMENT ON INDICTMENT 34775 (MISCONDUCT IN OFFICE) AFFIRMED; JUDGMENTS ON INDICTMENT 34751, COUNT I (PERJURY) AND COUNT II (FAILURE TO FILE CAMPAIGN REPORT) REVERSED.

COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–QUARTER BY ANNE ARUNDEL COUNTY

AND ONE–QUARTER BY MAYOR AND CITY COUNCIL OF BALTIMORE.