607 A.2d 575

**Orie P. MATTINGLY**

v.

**Aubrey F. MATTINGLY, et ux.**

**No. 1301 Sept. Term, 1991.**

Court of Special Appeals of Maryland.

June 2, 1992.

**250**

Nancy E. Paige, Baltimore (Gordon, Feinblatt, Rothman, Hoffberger & Hollander, on the brief, Paul J. Bailey, Leonardtown, of counsel), for appellant.

Richard A. Cooper (Stephen P. Fitzgerald and Mudd, Mudd & Fitzgerald, P.A., on the brief), La Plata, for appellees.

Argued before ROSALYN B. BELL, WENNER and MOTZ, JJ.

MOTZ, Judge.

The central question presented here is whether the circuit court committed reversible error in submitting this case for determination by a jury. Because the issues presented and remedies requested here are purely equitable and so did not entitle any party to a jury trial, the trial court did err in submitting the case to a jury. Moreover, this error resulted in prejudice to the appellant. Accordingly, we must reverse the judgment of the Circuit Court for St. Mary's County and remand for independent findings of fact.

(i)

Lester Mattingly Sons is a farming and excavation business in Leonardtown, Maryland, started by Lester Mattingly, Sr. His sons, Lester Mattingly, Jr. ("Buddy") and appellee, Aubrey Mattingly ("Aubrey"), worked with him until his death in 1963. After 1963, Buddy and Aubrey worked together to continue the family business.[1] For the most part, Buddy worked on the farm and operated the construction equipment, and Aubrey acquired the excavating jobs for the business. From 1963 until a few years before her death in 1976, Buddy and Aubrey's mother acted as bookkeeper for the business. After their mother's death, Aubrey's wife, Vicki Mattingly, assumed the duties of bookkeeper. There was testimony that the brothers worked "side by side" with "no cross words"; neither "boss[ed] or dominate[d]" the other. There was also testimony, however, that Buddy did not participate in the day-to-day financial affairs of the business; that he just "trusted them [Aubrey and Vicki] to tell [him] what was going on." During the first year after their father's death, Buddy earned a salary of three hundred dollars a month from the business. He then stopped receiving any regular income from the business, however, and received only "a few hundred dollars ... once or twice a year." Instead, Buddy lived off money he had previously made and money which was left to him by his mother and, it was alleged, did not have enough money to make repairs on his home.

In June 1984, at the age of 55, Buddy married appellant, Orie Penny Beasley ("Penny"). It was his first marriage

---

1. In the complaint it is asserted that the brothers were partners in the business and Buddy so testified at trial. Aubrey denied this in the answer to the complaint, but testified at trial that he and Buddy had worked together in the business and that partnership tax returns listing Buddy and Aubrey as partners were filed "until the time" Buddy "signed his interest over to" Aubrey. Moreover, Aubrey admitted executing a written agreement dated January 23, 1986 (introduced as an exhibit at trial), which evidences his commitment, as the owner of a 60% interest in Lester Mattingly Sons, to purchase from Buddy for $73,000 Buddy's 40% interest in that business.

and her third. Although they were both lifelong residents of St. Mary's County, they chose to marry in Charles County. They attempted to conceal their marriage from Buddy's family, especially Aubrey, because Buddy believed that Aubrey would disapprove. On their wedding day, at Penny's request, Buddy granted Penny a general power of attorney and executed a will leaving his entire estate to her, without informing Aubrey of the marriage. Penny sent Aubrey three letters asking him to "address and correct the wrongs that have been done [to Buddy in the business.]" Aubrey did not respond to any of the letters. When Aubrey finally learned of the marriage, he was very upset. He believed that Penny wanted to "break up" the family business. Buddy testified that Aubrey "almost every day" told him "to get rid of that woman or get a divorce ... turn your property over to me or get a divorce," which made Buddy feel "very bad."

A year and a half later, on December 20, 1985, after several consultations with an attorney (three times without Aubrey present), Buddy executed a no-consideration deed, conveying his share of approximately 626 acres of land to Aubrey and Vicki Mattingly. On the same date he executed another no-consideration deed, conveying an additional 143 acres to Aubrey and Vicki, and reserving a life estate in the land for himself. On January 23, 1986, Buddy entered into a written agreement with Aubrey for the sale of Buddy's interest in Lester Mattingly Sons. Under the terms of the agreement, Buddy agreed to sell to Aubrey his 40% interest in the business and equipment. Aubrey agreed to pay $50,000.00, plus repay a prior loan made by Buddy to the partnership in the amount of $23,000, for a total payment of $73,000. This total amount was to be paid at the rate of $10,000 per year beginning two and one-half years later, in July of 1988. Less than a month later, on February 5, 1986, Buddy signed a release of Aubrey from "all issues relating to all accounting" between himself and Aubrey for the business known as Lester Mattingly Sons and also released Aubrey "from all liability for claims and demands arising

out of the conduct of the business, accounting of funds, and any and all other transactions between us not contained in the Agreement of Sale of my share of the business dated January 23, 1986."

The parties stipulated that Buddy was competent "to enter into contracts and agreements" and that "his competency" at the time he executed the agreements set forth above "is not an issue in the case." Nevertheless, Dr. Jonas Rappeport, a forensic psychiatrist, testified that he had evaluated Buddy and determined, from a battery of psychiatric tests, that Buddy was suffering from "dependent personality disorder." Moreover, on December 21, 1988, Penny, at the request of Buddy, and over the objection of Aubrey, was appointed the guardian of her husband's property by the Circuit Court for St. Mary's County, *Mattingly v. Mattingly,* Case No. 87–69, December 1988. That holding was affirmed by this Court in an unreported opinion.

The present action was brought by Penny, as the guardian of Buddy's property, to set aside, on the grounds of "undue influence and other unfair means" by Aubrey, the two deeds, the sales agreement, and the release of liability entered into by Buddy. Penny also sought a dissolution of the partnership and an independent accounting of partnership affairs from 1963 to February 1987, whereby Buddy would receive one-half of the value of the partnership assets, repayment of a $28,000 loan allegedly made by him to Aubrey and Vicki, and half of the proceeds of a right-of-way purchased by Southern Maryland Electric Company (SMECO). Finally, Penny sought recovery of costs, including attorney's and other fees, plus interest and "damages as may be proper for the delay."

Aubrey filed a demand for a jury trial, and Penny filed a motion to strike the demand. After a hearing on the motion, the trial court entered an order denying Penny's motion to strike. There is no opinion accompanying that order, or explanation for it, in the record. The case was then tried to a jury on four specific issues:

1. Whether Aubrey dominated and coerced Lester to such an extent that Lester was prevented from exercising his own free judgment and choice in executing a deed to Aubrey and Victoria of Lester's interest in more than 600 acres of land without consideration;

2. Whether Aubrey exerted such influence, with respect to a second deed from Lester to the same parties for 143 acres of land, also without consideration;

3. Whether Aubrey exerted such influence with respect to the transfer of Lester's share in the brothers' partnership; and

4. Whether Aubrey exerted such influence with respect to a release by Lester of Aubrey from all claims respecting that partnership.

The jury answered "no" to each of the questions, and the trial court entered judgment in favor of Aubrey and his wife, Vicki.

Penny appeals, presenting four questions:

1. Did the lower court err in submitting this case to the jury?

2. Did the lower court err in determining as a matter of law that there was no confidential relationship between the parties?

3. Did the lower court err in entering judgment for appellees in the absence of clear and convincing evidence that there was no abuse of confidence and that the transactions were fair and proper?

4. Did the lower court err in excluding Dr. Rappeport's testimony with respect to Lester Mattingly's competency to make a valid gift?

(ii)

 Article 23 of the Maryland Declaration of Rights,[2] like the Seventh Amendment of the United States Constitu-

---

**2.** Article 23 provides in pertinent part:

tion, guarantees a right to a jury trial in actions at law. *See Bringe v. Collins,* 274 Md. 338, 346, 335 A.2d 670 (1975). There is, however, no right to a jury trial in actions in equity under federal, *Pernell v. Southall Realty,* 416 U.S. 363, 375, 94 S.Ct. 1723, 1729–30, 40 L.Ed.2d 198 (1974), or state law. *Impala Platinum Ltd. v. Impala Sales (U.S.A.), Inc.,* 283 Md. 296, 320, 389 A.2d 887 (1978). With the 1984 "merger of law and equity" in Maryland, parties may now "join legal and equitable claims in a single legal action," in the courts of this state as they have been able to do in the federal courts since 1938 when the "merger was accomplished in the federal courts." *Higgins v. Barnes,* 310 Md. 532, 541, 530 A.2d 724 (1987). The "merger of law and equity" was not intended to broaden or change the right to a jury trial:

> If a claim is brought that historically would have been filed on the law side of the court and a jury trial is properly demanded, a jury will hear the case. *Equitable claims will be decided by the court without a jury.*

*Hashem v. Taheri,* 82 Md.App. 269, 272–73, 571 A.2d 837 (1990) (emphasis added) (*citing* P. Niemeyer and L. Richards, *Maryland Rules Commentary* at 123, 125 (1984)). *See also In re Graham,* 747 F.2d 1383 (11th Cir.1984). *Kahle v. McDonough Builders, Inc.,* 85 Md.App. 141, 149, 582 A.2d 557 (1990).

■ In order to preserve inviolate the right to a jury trial, however, both the Supreme Court and the Court of Appeals have directed that when "the existence of both legal and equitable issues within the same case requires the selection between the jury and the court as the determiner of common issues, the discretion of the trial court 'is very narrowly limited and must, wherever possible, be exercised to preserve jury trial.'" *Higgins, supra,* 310 Md. at 544,

---

The right of a trial by Jury of all issues of fact in civil proceedings in the several Courts of Law in this State, where the amount in controversy exceeds the sum of five hundred dollars, shall be inviolably preserved.

530 A.2d 724 (*quoting Beacon Theatres v. Westover*, 359 U.S. 500, 510, 79 S.Ct. 948, 956, 3 L.Ed.2d 988 (1959)). Accordingly, if a case presents any legal issues, even if those issues are outweighed by equitable issues, the case is to be tried to a jury unless "the use of the jury trial itself will in some way obstruct a satisfactory disposition of the equitable claim." *Id.* 310 Md. at 551, 530 A.2d 724 (*quoting Thermo–Stitch, Inc. v. Chemi–Cord Processing Corp.*, 294 F.2d 486, 491 n. 12 (5th Cir.1961)).

■ Thus, as a result of the "merger of law and equity" it is often difficult to determine whether a particular case contains at least some legal claim, and so entitles the litigants to a jury trial, or is wholly equitable, and so carries no entitlement to a jury trial. The Court of Appeals has directed that "we turn to the federal case law for guidance in defining the scope of the right to jury trial in Maryland." *Id.* 310 Md. at 543, 530 A.2d 724. The Supreme Court has set forth three factors to be considered when examining whether a particular claim gives rise to a jury trial: (1) the customary manner of trying such a cause before the merger of law and equity; (2) the kind of remedy sought by the plaintiff; and (3) the abilities and limitations of a jury in deciding the issue. *Ross v. Bernhard*, 396 U.S. 531, 538 n. 10, 90 S.Ct. 733, 738 n. 10, 24 L.Ed.2d 729 (1970). As Judge McAuliffe suggested in *Higgins*, "the third prong" of the *Ross* test has not been utilized by the courts as "a sufficient ground to deny a jury trial." *Higgins, supra*, 310 Md. at 547, 530 A.2d 724. *See In re U.S. Financial Securities Litigation*, 609 F.2d 411, 426 n. 48 (9th Cir.1979), *cert. denied sub. nom., Gant v. Union Bank*, 446 U.S. 929, 100 S.Ct. 1866, 64 L.Ed.2d 281 (1980) (noting that the Supreme Court has considered the Seventh Amendment question on several occasions since *Ross* without once considering this third factor). Recently, the Supreme Court explained that the second prong of the *Ross* test—whether the remedy sought is legal or equitable—is the most important factor to be considered. *Local No. 391 v. Terry*, 494 U.S. 558, 110 S.Ct. 1339, 1345, 108 L.Ed.2d 519 (1990) (*citing Granfinan-*

*ciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989)).

■ With these principles in mind, we turn to analysis of the case at hand. The short, four paragraph complaint here (there is no counterclaim or cross-claim), alleges that Buddy is "a disabled person" over whom Aubrey, his brother and partner, exercised "undue influence" and "unfair advantage"; it requests that "all signed documents from April, 1985 through February, 1987 between the parties" be "[s]et aside" and a "complete audit [be done] of the partnership and the affairs of the two brothers." The complaint then states that "the following are some of the known items which need correction by this Honorable Court:

\* \* \* \* \* \*

Lester A. Mattingly, Jr. should receive one-half of the accounts receivable;

Repayment of the $28,000 loan from Lester A. Mattingly, Jr. to Defendants at 12% interest;

Payment to Lester A. Mattingly, Jr., of one-half of the $16,000 SMECO right-of-way;

\* \* \* \* \* \*

That the Defendants pay all costs of every kind, including ... interest and damages as may be proper for the delay."

Thus, this is an action for rescission and accounting between partners. An action for rescission or cancellation of a contract or other instrument is traditionally equitable and so was customarily decided by a court of equity before the merger of law and equity. *American Life Ins. Co. v. Stewart,* 300 U.S. 203, 212, 57 S.Ct. 377, 378–79, 81 L.Ed. 605 (1937); *Conner v. Groh,* 90 Md. 674, 683, 45 A. 1024 (1900) (law is "without jurisdiction to cancel or reform a contract"). *See also* 5 Moore's Federal Practice ¶ 38.23 (2nd ed. 1991) ("Moore"). Similarly, an accounting between partners in an existing partnership, like that alleged here between Buddy and Aubrey, was traditionally an exclusively equitable action in Maryland. *McSherry v. Brooks,* 46

Md. 103, 115, 116 (1877) ("The general rule is too well established to admit of any question, that actions at law cannot be maintained by one partner against another, involving the state of the partnership accounts"). *See also* Moore ¶ 38.25 ("under the Federal Rules, there is no right to a jury trial if the case or issue for an accounting is one formerly within the exclusive jurisdiction of equity, or is an incident to a case or issue over which there is equitable jurisdiction") (footnotes omitted); *Kahle v. McDonough Builders, Inc., supra,* 85 Md.App. at 150–54, 582 A.2d 557. Thus, application of the first prong of the *Ross* test indicates that there is no right to a jury trial here.

Analysis of the more important second *Ross* factor also leads to this conclusion because the "relief requested" in the complaint is exclusively equitable in nature. The principal relief requested is rescission. It is well-settled in Maryland that rescission is a purely equitable remedy. *Creamer v. Helferstay,* 294 Md. 107, 114, 448 A.2d 332 (1982) ("It is beyond dispute that the authority of a court to rescind or cancel a contract is purely equitable"). The remaining relief requested depends on the outcome of the action for rescission. If the partnership has been validly dissolved as Aubrey claims, Penny is not entitled to rescission of the release, etc., which she alleges improperly dissolved it, or to an accounting of partnership assets. If, however, Buddy's transfer of his partnership interest and his release of Aubrey's liability was due to the "undue influence" of Aubrey, then the partnership still exists, and Buddy is entitled to an accounting of the partnership assets. *See Stevens v. Yeatman,* 19 Md. 480, 484 (1863); *Malinow v. Eberly,* 322 F.Supp. 594, 600 (D.Md.1971). In Maryland, a partner is entitled to "an accounting in equity from others in transaction" but not "to recover in an action at law ... for a share of profits" where there has been no "settlement or account stated between them." *Morgart v. Smouse,* 103 Md. 463, 468–9, 63 A. 1070 (1906).

Thus, to recapitulate, if Penny obtains one equitable remedy, rescission, *i.e.,* by demonstrating an existing part-

nership between Buddy and Aubrey, she is entitled to another equitable remedy, accounting. In the accounting, she is entitled to have a court determine how much money, if any, Buddy is due from the assets of the partnership and then dissolve the partnership. In the course of the accounting, the court would determine Buddy's entitlement to the specific dollar amounts requested, *i.e.*, one-half of the value of the partnership assets, the repayment of the $28,000 loan, and one-half of the proceeds from the SMECO right-of-way. Since entitlement to these monies is simply a part of the purely equitable remedy of accounting, it provides no basis for a right to a jury trial.

Indeed, the Supreme Court has specifically recognized that damages which are "restitutionary," *e.g.*, "disgorgement of improper profits" or "incidental to or intertwined with" certain equitable relief, *e.g.*, an injunction, may be equitable. *Local No. 391 v. Terry, supra,* 110 S.Ct. at 1348. *See also Fink v. Pohlman,* 85 Md.App. 106, 122, 582 A.2d 539 (1990) (since "any prayer for a legal remedy is inexorably intertwined with the equitable nature of the claim made and the relief sought" it was held there was no entitlement to jury trial). Some of the specific dollar amounts requested here—a portion of the partnership assets and proceeds of the SEMCO right-of-way—may be "disgorgement" of improper profits; all are "incidental to and intertwined" with equitable relief—rescission and partnership accounting. Accordingly, they do not entitle the litigants to a jury trial.

*Dairy Queen v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962) is not to the contrary. While *Dairy Queen* did involve a request for accounting, it was an accounting of profits from a franchising contract, not a request for rescission and an accounting between partners. The trial court held that the action was "purely equitable" or "if not purely equitable, whatever legal issues that were raised were 'incidental' to equitable issues, and in either case, no right to jury trial existed." *Id.* at 470, 82 S.Ct. at 896. The Supreme Court reversed, noting first that, if there were legal issues, the right to trial by jury would not

be lost as to those issues just because they were "incidental" to equitable issues. The court then held that a request for a nominally equitable remedy, accounting, could not be used to convert what was otherwise a legal claim for breach of contract into an equitable one in order to defeat the right to a jury trial. Here, in contrast, there are *no* legal *issues*. Rather, as in *Phillips v. Kaplus*, 764 F.2d 807 (11th Cir. 1985), *cert. denied*, 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986), there is a claim for rescission and partnership accounting and so the type of relief requested "necessarily involves the court's equitable jurisdiction." *Id.* at 814. Thus, here as in *Phillips*, "the fact that the ultimate disposition of the action will involve a distribution of partnership assets to all parties does not convert this into a legal action for damages. Rather, it merely is the natural consequence of the winding up of partnership affairs. This is simply not a case where the party is attempting to disguise a legal claim for damages by asking for an accounting." *Id. See* Moore § 38.25 (*citing and quoting Phillips* with approval).

In sum, when this case is examined pursuant to the *Ross* test it is clear that: (1) before the merger of law and equity, the customary manner of trying this action for rescission and partnership accounting was in an equity court, *and* (2) the kind of remedies sought here—rescission, accounting and specific monetary amounts pursuant to the accounting—are equitable in nature. Thus, there was no entitlement to a jury trial.

### (iii)

■ Aubrey, perhaps recognizing the inevitability and correctness of the above conclusion, maintains that even if "the lower court erred in submitting the disputed factual issues in this case to a jury, that error was harmless." This is so, Aubrey claims, because although there is a constitutional right to a jury trial in certain cases, there is no corresponding constitutional right to a bench trial. *See, e.g., United States v. Jackson*, 390 U.S. 570, 584, 88 S.Ct. 1209, 1217–18, 20 L.Ed.2d 138; *Singer v. United States*, 380

U.S. 24, 34, 85 S.Ct. 783, 789, 13 L.Ed.2d 630 (1965); *United States v. Joyce*, 499 F.2d 9, 21 (7th Cir.1974), *cert. denied*, 419 U.S. 1031, 95 S.Ct. 512, 42 L.Ed.2d 306 (1974); *Thwing v. State*, 470 F.2d 351, 353 (8th Cir.1972), *cert. denied*, 411 U.S. 937, 93 S.Ct. 1917, 36 L.Ed.2d 399 (1973); *Thermo-Stitch, Inc. v. Chemi–Cord Processing Corp.*, 294 F.2d 486, 490 (5th Cir.1961). *But see* Constitution of Maryland Art. IV, § 8(a); *Thomas v. State*, 89 Md.App. 439, 598 A.2d 789 (1991). Even if Aubrey is correct, this does not mean that the error here is harmless.

It may well be that a jury is without power or jurisdiction to decide this purely equitable action. As noted above, prior to the merger of law and equity in Maryland, a law court had no jurisdiction over an action for rescission, *Creamer v. Helferstay, supra*, 294 Md. at 116, 448 A.2d 332, or one for accounting between partners involving the status of partnership affairs. *McSherry v. Brooks, supra*, 46 Md. at 115; *Morgart v. Smouse, supra*, 103 Md. at 468–69, 63 A. 1070. We have held that the "merger" of law and equity "was not intended to abolish all differences between legal and equitable claims and defenses to them, but only to abolish '[p]leading distinctions between law and equity' and 'to assure that [a]ll claims and defenses are determined in one court.'" *Southern Four v. Parker*, 81 Md.App. 85, 92, 566 A.2d 808 (1989) (*quoting Smith v. Gehring*, 64 Md.App. 359, 370–72, 496 A.2d 317 (1985)). Thus, relief and defenses that are exclusively within the jurisdiction of equity remain so, despite the merger of the separate forms of pleading and the separate courts. *See, e.g., Southern Four v. Parker, supra*, 81 Md.App. at 91, 566 A.2d 808 (conditional civil judgment void in case at law for money damages for breach of contract); *Smith v. Gehring, supra*, 64 Md.App. at 370–72, 496 A.2d 317 (equitable doctrine of laches unavailable as a defense to purely legal claim). Moreover, Maryland Rule 2–511(d) expressly provides that "Issues of fact not triable of right by a jury *shall* be decided by the court and may not be submitted to a jury for an advisory verdict" (emphasis added).

The Court of Appeals, however, has shown great reluctance to order reversal because a trial court's law/equity choice was erroneous. Instead, it has generally, after acknowledging that law/equity error, simply resolved the case on the merits. *See, e.g., Mayor of Landover v. Brandt,* 199 Md. 105, 107–08, 85 A.2d 449 (1952); *Burns v. Bines,* 189 Md. 157, 164, 55 A.2d 487 (1947). We have found only three cases in which, after holding the law/equity choice erroneous, the Court of Appeals has reversed and remanded the case; and in all three cases the law/equity error was accompanied by another ground for reversal. *See Creamer v. Helferstay,* 294 Md. 107, 116–133, 448 A.2d 332 (1982); *Millison v. Citizens Nat'l Bank,* 256 Md. 431, 439, 260 A.2d 324 (1970); *Senick v. Lucas,* 234 Md. 373, 381, 199 A.2d 375 (1964). Moreover, none of these cases are post-merger cases and none involve wholly equitable claims improperly heard by a *jury.* Accordingly, we might well be reluctant to find reversal and remand required here solely on jurisdictional grounds. *But see Creamer v. Helferstay,* 294 Md. at 116, 448 A.2d 332 ("the order appealed from is being vacated on the procedural ground that *a law court has no power* to affirmatively order the rescission of a contract) (emphasis added); *id.* at 133, 448 A.2d 332 (Murphy, C.J. concurring) ("The trial judge sitting ... in an action at law, possessed no equity powers and was therefore *without jurisdiction* to rescind the contract. I would go no further in disposing of the appeal") (emphasis added).

 In any event, we need not so hold since the improper grant of jury trial here was accompanied by error and resulted in actual prejudice which requires reversal and remand. This is so because when the case was improperly submitted to a jury, the plaintiff, Penny, on behalf of Buddy, did not get the benefit of the proper, and more lenient, equitable burden of proof standard on the critical issue of confidential relationship. In an action at law, the person claiming the existence of a confidential relationship has the burden of proving that the relationship exists and that fraud by the defendant injured the plaintiff. *Lackey v.*

*Bullard,* 262 Md. 428, 433, 277 A.2d 593 (1971). As the Court of Appeals has recognized, the burden of proving fraud in such an action at law is a "heavy one" and may only be met with "clear and convincing proof." *Id.* In a suit in equity, however, if a plaintiff establishes the existence of a confidential relationship, the burden shifts to the defendant to establish that the plaintiff's actions were "free, voluntary and unbiased." *Mullan v. Mullan,* 222 Md. 503, 506, 161 A.2d 693 (1960). Thus, when a confidential relationship is established, and "the party occupying the position of dominion," here Aubrey, "receives a benefit" from the transaction, there is a presumption against its validity, placing upon the beneficiary, Aubrey, the burden of establishing by clear and convincing evidence that there has been no abuse of confidence, and that he "acted in good faith, and that the act by which [he] benefitted was the free, voluntary, and independent act of the other party to the relationship." *Wenger, Admx. v. Rosinsky,* 232 Md. 43, 49, 192 A.2d 82 (1963). *Id. See also Wimmer v. Wimmer,* 287 Md. 663, 669, 414 A.2d 1254 (1980).

At trial, Penny requested a jury instruction consistent with the *equitable* burden of proof standard, *i.e.,* that if a fiduciary or confidential relationship exists as to a disputed transaction, the burden of proof is on the benefitting party to prove that the transaction was fair and that it was the deliberate and voluntary act of the other party. The trial court declined to give the instruction[3] finding, as a matter of law, "that there is no sufficient evidence in this case to establish a confidential relationship." This finding was error.

---

**3.** If the case had been one properly tried at law, the trial court's refusal to give the instruction would not have been error because a confidential relationship does not shift the burden of proof to the benefitting party *at law.* Thus, the error here is not the trial court's refusal to instruct the jury with respect to the proper burden of proof at law, but rather the submission of the case to the jury when it should have been tried in equity where a different standard of proof was proper.

In fact, although the parties stipulated that Buddy was competent "to enter into contracts and agreements" and that "his competency was not an issue in the case," there was abundant evidence, from both fact and expert witnesses, from which a fact finder could have concluded that Buddy, who suffered from a dependent personality disorder, heavily relied upon and reposed confidence in Aubrey, and so there was a confidential relationship between the two brothers. *See, e.g., Desser v. Woods,* 266 Md. 696, 708, 296 A.2d 586 (1972) (reliance for advice and handling of some personal and business affairs is sufficient to establish a *prima facie* confidential relationship). Indeed, a confidential relationship between Aubrey and Buddy had been established as a matter of law because the brothers were partners. As noted within, *supra* note 1, it was undisputed that a partnership had existed between Aubrey and Buddy; while Aubrey claimed that this partnership had been properly dissolved, Buddy claimed it had not and that he was entitled to an accounting. The brothers agreed, however, that they had been partners. It is well-settled that the relationship between partners is a fiduciary one. *Herring v. Offutt,* 266 Md. 593, 597, 295 A.2d 876 (1972); *Allen v. Steinberg,* 244 Md. 119, 128, 223 A.2d 240 (1966); *Upman v. Thomey,* 145 Md. 347, 349, 125 A. 860 (1924). Since, as a matter of law, there was a confidential relationship between Aubrey and Buddy, the plaintiff, Penny, as Buddy's guardian, was entitled to have an equity court determine if the defendants, Aubrey and Vicki, established that Buddy's actions (execution of the deed, release, etc.) were "free, voluntary and unbiased." *See Mullan v. Mullan, supra,* 222 Md. at 506, 161 A.2d 693.

We remand this case to the circuit court so that it can make independent findings of fact and enter judgment upon the evidence that was presented at the trial before it, consistent with the directives set forth in this opinion. Although this procedure has been criticized as forcing the trial judge in view "of the expiration of considerable time between the original trial and the remand . . . to rely on an

imperfect recollection of events at trial," it is recognized that "a balancing of the extent of prejudice to one erroneously denied a nonjury trial against the inconvenience of a new trial, has led courts to follow this course." Note, *The Right to a Nonjury Trial,* 74 Harv.L.Rev. 1176, 1185–86 (1961). *See, e.g., Miller v. O'Brien,* 17 Wash.2d 753, 137 P.2d 525 (1943); *Byrne v. McKeachie,* 29 S.D. 476, 137 N.W. 343 (1912).

### (iv)

In order to assist the trial court in making its independent findings of fact on remand, we consider the final question—the exclusion of Dr. Rappeport's expert testimony with respect to Buddy's capacity to make a valid gift. Dr. Rappeport was called as an expert to testify as to Buddy's mental condition at the time of the disputed transactions. His testimony was preserved by video deposition, which the jury watched at trial. On cross-examination, counsel for Aubrey and Vicki asked Dr. Rappeport whether, in his opinion, Buddy was capable of making a valid gift. Dr. Rappeport answered, "no." Counsel for Aubrey and Vicki subsequently withdrew the question and asked the court to exclude the question and answer at trial; the court granted the request.

The admissibility of expert testimony is a matter largely within the discretion of the trial court, and its decision to admit or exclude such testimony will seldom constitute a ground for reversal. *Bloodsworth v. State,* 307 Md. 164, 185, 512 A.2d 1056 (1986); *Raithel v. State,* 280 Md. 291, 301, 372 A.2d 1069 (1977); *Franceschina v. Hope,* 267 Md. 632, 636, 298 A.2d 400 (1973); *Oaks v. State,* 83 Md.App. 1, 9, 573 A.2d 392 (1990). The party challenging the ruling of the trial court on the admissibility of expert testimony has the burden of showing an abuse of discretion. *Franceschina, supra,* 267 Md. at 636–37, 298 A.2d 400.

As Penny notes, one of the central issues in the case was the validity of certain gifts made by Buddy to Aubrey and Vicki, and expert opinion "is admissible, even

on the ultimate issue of fact, 'if it is relevant and will aid the trier of fact.' " This is an accurate statement of the law. Indeed, at oral argument in this Court, counsel for Aubrey acknowledged that it would *not* have been error for the trial court to admit this testimony. The failure to permit an opinion as to the "ultimate fact," however, is not error where the expert is permitted to "develop the component of predicate facts that would logically yield that 'ultimate fact.' " *Cirincione v. State,* 75 Md.App. 166, 180–81, 540 A.2d 1151, *cert. denied,* 313 Md. 611, 547 A.2d 188 (1988). Dr. Rappeport was permitted to testify that Buddy was "suffering from a dependent personality disorder," the essential feature in which the individual passively "allows others to assume responsibility for major areas of his or her life"; that he was "not a stupid person"; that he "had trouble getting his thoughts together"; "that there was no serious cognition or understanding problems"; that he "allowed others to make all his decisions ... had allowed his brother, Aubrey, and was now, in a certain sense, allowing Penny"; and "that he subordinated his own needs because he was afraid of losing that support and he certainly lacks self-confidence and saw himself as being inadequate and incompetent." The jury was able to consider all these opinions and the rest of Dr. Rappeport's testimony.

Accordingly, the exclusion of Dr. Rappeport's opinion as to Buddy's ability to make a gift was not error. On the other hand, consideration of this testimony by the fact finder would not be error either. Thus, on remand, in making its independent findings of fact, the trial court may consider all of Dr. Rappeport's testimony, crediting all, part, or none of it as the trial court deems appropriate.

JUDGMENT VACATED AND REMANDED TO THE CIRCUIT COURT FOR ST. MARY'S COUNTY FOR INDEPENDENT FINDINGS OF FACT CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEES.