667 A.2d 992

Sandra Kay MARTIN

v.

HOWARD COUNTY, Maryland.

No. 297, Sept. Term, 1995.

Court of Special Appeals of Maryland.

Dec. 4, 1995.

Carol A. Smith (Doris Green Walker, on the brief), Ellicott City, for Appellant.

F. Todd Taylor, Jr., Senior Assistant County Solicitor (Barbara M. Cook, Howard County Solicitor, on the brief), Ellicott City, for Appellee.

Argued before WILNER, C.J., HOLLANDER, J., and JOHN J. GARRITY, Judge (retired), Specially Assigned.

WILNER, Chief Judge.

We are concerned here with whether, in an action brought by a county under Md.Code Real Property art., § 14–120, to evict a tenant for maintaining a nuisance, the tenant is entitled to a jury trial.

Section 14–120 was enacted in 1991 to address concerns expressed by citizens' groups over the adverse effect of drug trafficking in their communities.[1] Among other things, the section defines and declares as a nuisance certain property, including privately owned residential buildings, used for the purpose of illegally administering, manufacturing, distributing, or storing controlled dangerous substances or paraphernalia. It authorizes certain persons and organizations, including the county attorney, to bring an action under Md.Code Cts. &

---

[1] In a letter to the Senate Judicial Proceedings Committee supporting the bill, the State's Attorney for Baltimore City, at whose urging the bill was introduced, noted that citizens "feel as if they are captives in their own homes; afraid to venture outside for fear of drug dealers who have invaded their neighborhoods." The purpose of the legislation, he said, was to respond to those concerns by denying drug dealers a base of operation:

> "Many dealers rent houses from which they either store or sell drugs. Neighborhoods become overrun with workers, known as runners, who distribute drugs as well as by those who seek to purchase them. Hazards, excess traffic, disturbances, crime and violence results from this activity and clearly cause undesirable nuisances in the community."

Jud.Proc. art., § 4–401, to abate the nuisance, and, in subsections (e) and (f), it provides for certain remedies that the court may order in such an action.

Section 14–120(e) states generally that the court "may issue an injunction or order other equitable relief whether or not an adequate remedy exists at law." Subsection (f) affords three more specific remedies, two of which are pertinent here. Subsection (f)(1) provides:

> "Notwithstanding any other provision of law, and in addition to or as a component of any remedy ordered under subsection (e) of this section, the court, after a hearing, may order a tenant with knowledge of the existence of the nuisance to vacate the property within 72 hours."

Subsection (f)(2) allows the court to grant a "judgment of restitution or the possession of the property to the owner" if the owner and lessee are parties to the action and a tenant "has failed to obey an order under subsection (e) of this section or paragraph (1) of this subsection."

The Legislature directed that this action be disposed of quickly. Subsection (j) requires that the action be heard in the district court within 14 days after service of process on the parties. Subsection (*l* ) directs that any appeal be filed within 10 days after the date of the order of judgment and that the appeal be heard very promptly.[2]

## THE FACTS

Appellant and one Van Albert Carroll rented a townhouse in Columbia from Columbia Housing Limited Partnership

---

**2.** As pointed out by the Attorney General in his approval letter to the Governor, there is a discrepancy in § 14–120(*l* ) with respect to the time for hearing the appeal. Paragraph (2)(i) provides that, on motion of any party, the circuit court shall set a date for a hearing, which shall not be more than 15 days after the date the motion is filed. Paragraph (2)(ii), however, requires at least 20 days notice of the hearing. Whichever provision would control, it is clear that the case is supposed to be on a fast track. This case, which was specially assigned immediately upon its arrival in the circuit court on April 15, 1994, was allowed to linger for nearly nine months in that court.

(CHLP). The lease is not in the record; we know only that the rent was partially subsidized by the U.S. Department of Housing and Urban Development. The fair market rental value of the townhouse was $467/month; appellant paid only a fixed percentage of her income toward that rent, however, and the Government paid the balance.

On December 1, 1993, the police observed Carroll come out of the townhouse, make contact with a police informant, drop an object on the ground, make contact with another person, and then return to the house. Six days later, the police raided the house and found a plastic bag containing 3.2 grams of cocaine and eight vials with a white powder residue. Appellant and Carroll were arrested and charged with possession of cocaine and possession with intent to distribute cocaine.

On February 28, 1994, Howard County filed a complaint in the district court against appellant, Carroll, and CHLP, alleging that appellant and Carroll had knowingly used the property for the distribution and storage of a controlled dangerous substance and controlled paraphernalia and that the property was therefore a nuisance within the meaning of § 14–120. The county asked the court to order appellant and Carroll to vacate the property within 72 hours after a hearing on the matter, to grant CHLP restitution of possession, and to grant such further relief, including costs and attorney's fees, as may be appropriate. Appellant promptly demanded a jury trial, asserting that the amount in controversy, measured by the amount claimed and the value of her right to continued possession of the property, exceeded $5,000. After initially striking the demand, the court reconsidered and, over the county's objection, transferred the case to the Circuit Court for Howard County.

In the circuit court, the county moved to strike the request for jury trial or, in the alternative, to advance the case. On April 26, 1994, the court denied the motion to strike the jury trial request, concluding that the case was, in effect, an eviction action involving a person otherwise entitled to indefinite subsidized housing. Though not cited in the brief hand-

written order, the court no doubt had in mind the decision of the Court of Appeals in *Carroll v. Housing Opportunities Comm'n*, 306 Md. 515, 510 A.2d 540 (1986), discussed in more detail later in this Opinion.

There then ensued a paper war over requests by both sides for discovery. On September 28, 1994, the county filed a complaint for injunctive relief, which essentially repeated the allegations and requests made in the district court complaint, and a motion for summary judgment. Even before appellant could answer the complaint, the court denied the request for immediate injunctive relief. The order doing so, if there was one, is not in the record extract; the docket entry indicates a finding that the county would suffer no immediate, substantial, or irreparable injury.

Trial of the case, before a jury, was scheduled for January 9, 1995. On the morning of trial, however, the court *sua sponte* "revisited" the county's motion to strike the jury trial request and remand the case to the district court. The county asserted that the action was essentially one for injunctive relief to abate a nuisance, which was equitable in nature and for which there was no right to a jury trial. It sought to distinguish the instant case from that in *Carroll v. Housing Opportunities Comm'n, supra*, 306 Md. 515, 510 A.2d 540, on the ground that this was not an attempt to evict a tenant for breach of lease or for holding over. Appellant responded that, if the county wanted only some form of injunctive relief under § 14–120(e), she would strike her request for jury trial. She complained, however, that the demand for eviction within 72 hours made this an eviction case, not just one for injunctive relief. Accordingly, she insisted on her right to a jury trial.

The court found the county's argument persuasive and thus struck its previous orders, granted the county's motion to strike the jury trial request, and remanded the case to the district court. This appeal ensued, in which appellant contests that ruling and also certain rulings relating to discovery.

## DISCUSSION

Appellant's claim is founded, ultimately, on Maryland Declaration of Rights, art. 23, which, in pertinent part, declares that "[t]he right of trial by Jury of all issues of fact in civil proceedings in the several Courts of Law in this State, where the amount in controversy exceeds the sum of five thousand dollars, shall be inviolably preserved." We consider this Constitutional mandate, first, in light of *Carroll v. Housing Opportunities Comm'n, supra,* 306 Md. 515, 510 A.2d 540.

*Carroll,* in the words of the Court of Appeals, concerned "the right to a jury trial in an action by a public housing authority to recover possession of a rental unit from a tenant in a federally funded public housing complex." *Id.* at 517, 510 A.2d 540. Ms. Carroll, the tenant, paid $76/month toward the rent for a townhouse. The balance of the rent was paid by the Government. It was not clear what the fair market rental value of the townhouse was, but there was some evidence that it was over $400/month. The lease required that tenants not engage in conduct that would disturb the peace and order of the neighborhood and that they prevent their guests from engaging in such conduct.

On one occasion, a guest of Ms. Carroll became involved in a fight with another visitor to the complex. Although Ms. Carroll was not directly involved in the altercation, the Commission terminated her tenancy for failure to control her guest. When she refused to vacate the townhouse, the Commission filed an action in the district court under Md.Code Real Prop. art., § 8–402 to evict her as a tenant holding over.[3] Ms. Carroll demanded a jury trial, and the case was transferred to the circuit court. The circuit court later determined that the amount in controversy did not satisfy the Constitutional and statutory threshold, which was then $500 and is now $5,000, and, for that reason remanded the case to the district court.

---

3. Real Property art., § 8–402, authorizes a landlord to file suit in the district court to recover possession of the premises from a tenant holding over.

In reversing that order, the Court of Appeals held that (1) the order of remand was appealable because it terminated the action in the circuit court, (2) an action by a landlord under Real Prop. art., § 8–402 to recover possession of leased property was an action at law to which the right of jury trial attached, (3) in determining whether the amount in controversy exceeds the legal threshold for a jury trial, the court must be guided by what the plaintiff claims is in dispute unless it "clearly appears that the claim is actually for less than that amount," and (4) considering not just the rent actually being paid by the tenant but also the value of her right to continued occupancy—the "bargain value" of her lease—it did not clearly appear that the amount in controversy was less than what the tenant claimed.

The county does not contest the appealability of the remand order in this case; nor does it contest that the amount in controversy, under the standards enunciated in *Carroll*, exceeds the threshold sum of $5,000. The controversy, and the asserted distinction between this case and *Carroll*, lies in whether this is the kind of action to which, apart from any monetary threshold, the right of jury trial historically attached. The county maintains that, unlike *Carroll*, this is not the case of a landlord seeking to repossess leased property from his tenant under Real Prop. art., § 8–402, but rather an action to abate a statutory nuisance. That kind of action, it maintains, has always been regarded as equitable in nature and therefore not subject to jury trial. Appellant, understandably, looks at the remedy sought—her eviction and the landlord's reentry—and sees no meaningful distinction.

The Supreme Court, in the context of the Seventh Amendment to the U.S. Constitution, and the two appellate courts in Maryland, in the context of art. 23 of the Declaration of Rights, have dealt, in a more general way, with whether, and to what extent, the right to a jury trial attaches in an action that is both legal and equitable in nature or that seeks both legal and equitable relief. The problem, though perhaps latent in a more narrow aspect earlier, became more acute

with the merger of law and equity procedure, achieved in the Federal system in 1938 and in Maryland in 1984.

There are essentially two aspects to the problem—first, determining whether a particular claim is legal or equitable in nature, and second, in an action presenting both legal and equitable claims, sorting out what gets submitted to a jury and what is to be tried by the court.

The second aspect often involves an action in which both legal and equitable claims, arising from the same underlying conduct or transaction and involving common issues of disputed fact, are presented. In *Higgins v. Barnes,* 310 Md. 532, 530 A.2d 724 (1987), the Court had before it an action for specific performance, which was equitable in nature and therefore historically tried by the court, and a counterclaim for damages, which was legal in nature and thus historically triable before a jury, both involving common issues of law and fact. In that context, the Court adopted the Federal approach of favoring the right to jury trial: "If an asserted counterclaim presents a legal claim historically accorded the right to jury trial and raises factual issues in common with the plaintiff's equitable claim, the defendant is ordinarily entitled to a jury determination of those factual legal issues." *Id.* at 547, 530 A.2d 724.

In *Hashem v. Taheri,* 82 Md.App. 269, 571 A.2d 837 (1990), the plaintiff, in a multi-count complaint, asserted both derivative actions, as a stockholder on behalf of a corporation (equitable claims), and direct claims for damages (legal claims), all of which were dependent on whether he was, in fact, a stockholder. The question was whether that issue, which was in dispute, was to be tried by a jury as a law case or a judge as an equitable case. We concluded that the common issue was triable by a jury, adopting the approach of the Supreme Court in *Ross v. Bernhard,* 396 U.S. 531, 537–38, 90 S.Ct. 733, 737–38, 24 L.Ed.2d 729 (1970):

> "[W]here equitable and legal claims are joined in the same action, there is a right to jury trial on the legal claims which must not be infringed either by trying the legal issues as

incidental to the equitable ones or by a court trial of a common issue existing between the claims."

Reviewing these decisions in *Mattingly v. Mattingly,* 92 Md.App. 248, 256, 607 A.2d 575 (1992), we concluded that "if a case presents any legal issues, even if those issues are outweighed by equitable issues, the case is to be tried to a jury unless 'the use of the jury trial itself will in some way obstruct a satisfactory disposition of the equitable claim.'"

The second aspect of the problem, thus, has been fairly well resolved. The first aspect, which we also dealt with in *Mattingly v. Mattingly,* remains the more difficult. *Mattingly* involved an action to set aside certain deeds and other documents on the ground that they had been the product of undue influence, to dissolve a partnership, and for an accounting. At the defendant's request, the case was submitted to a jury, which returned a verdict in the defendant's favor. The issue on appeal was whether the case should have been submitted to a jury.

Judge Motz, writing for the Court, observed that, as a result of the merger of law and equity procedure, "it is often difficult to determine whether a particular case contains at least some legal claim, and so entitles the litigants to a jury trial, or is wholly equitable, and so carries no entitlement to a jury trial." 92 Md.App. at 256, 607 A.2d 575. We looked to the three-factor analysis used by the Supreme Court in *Ross v. Bernhard, supra,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729—(1) the customary manner of trying such a cause before the merger of law and equity, (2) the kind of remedy sought by the plaintiff, and (3) the abilities and limitations of a jury in deciding the issue—noting, however, that the third factor had not, in fact, been utilized by the courts as a sufficient ground to deny a jury trial. Applying the first two factors in the *Mattingly* case, we concluded that all of the forms of action and relief sought were equitable in nature, and that the court therefore erred in submitting them to a jury.

Regrettably, that same analysis does not lead to such a simple conclusion in this case. On the one hand,

*Carroll v. Housing Opportunities Comm'n, supra*, 306 Md. 515, 510 A.2d 540 makes clear that an action by a landlord to recover possession of leased premises from his tenant remains an action at law triable before a jury. *See also Bringe v. Collins*, 274 Md. 338, 335 A.2d 670 (1975). Similarly, an action in ejectment generally, by an owner or person having the right of possession, is one at law, in which disputed facts are triable before a jury. On the other hand, actions to abate a nuisance, usually through injunctive relief, have traditionally been regarded as equitable in nature, triable by the court. *See Adams v. Commissioners of Trappe*, 204 Md. 165, 102 A.2d 830 (1954).

There is a caveat to this last principle. If, indeed, the plaintiff is seeking injunctive relief to abate the nuisance, the action is equitable in nature. That does not mean, however, that all actions founded upon nuisance are equitable actions. Actions can be brought to recover money damages, or for other non-equitable relief, because of a nuisance, and those cases are regarded as law cases, triable before a jury. *See Corbi v. Hendrickson*, 268 Md. 459, 302 A.2d 194 (1973), which happened to involve an injunction, but in which the Court noted, *Id.* at 464, 302 A.2d 194, that "where a trade or business as carried on interferes with the reasonable and comfortable enjoyment by another of his property, a wrong is done to a neighboring owner for which an action lies *at law or equity*." (Emphasis added.) *See also Gorman v. Sabo*, 210 Md. 155, 122 A.2d 475 (1956) and *Taylor v. M. & C.C, of Balt.*, 130 Md. 133, 99 A. 900 (1917), where actions for damages resulting from a nuisance were tried before a jury; also *WSSC v. CAE–Link Corp.*, 330 Md. 115, 622 A.2d 745 (1993).

This brings us back to the two factors noted in *Ross v. Bernhard*, which we found governing in *Mattingly v. Mattingly*—the customary manner of trying such a cause before the merger of law and equity procedure and the kind of remedy sought by the plaintiff.

The county asked for three forms of relief in its district court complaint—vacation of the premises within 72 hours

after a hearing on the matter, restitution of the property to the landlord, and costs and attorney's fees. We are not concerned with the third of these, as appellant has never contended, in this Court or in the circuit court, that the inclusion of that form of ancillary monetary relief entitles her to a jury trial. Indeed, it is not at all clear that the county would be entitled to attorney's fees in any event. Such fees are authorized by § 14–120(i) where a community association is the complainant.

As we indicated, § 14–120(e) authorizes the court to issue an injunction or order other equitable relief, and § 14–120(f)(1) provides that, "in addition to or as a component of" such relief, the court may order a tenant "to vacate the property within 72 hours." Section 14–120(f)(2) authorizes a court to grant a judgment of restitution of possession to the owner. The restitution remedy under § 14–120(f)(2) is a very different kind of remedy, with different effect and implications, than those afforded by subsections (e) or (f)(1).

An order directing the tenant to vacate the property is clearly injunctive in nature; it commands specific conduct on the part of the defendant and presumably could be enforced through contempt proceedings. Indeed, by authorizing, in § 14–120(b), the action to be brought under Cts. & Jud.Proc. art., § 4–401, the Legislature recognized that fact. Section 4–401(7) vests exclusive original civil jurisdiction in the District Court in "[a] petition *of injunction* filed by ... [a] person who brings an action under § 14–120 of the Real Property Article." (Emphasis added.)

Such an order, by itself, does not terminate the tenancy. For one thing, the word "tenant" is defined in the statute to include any person "occupying property, whether or not a party to a lease," and so may include mere guests who are not tenants in the traditional property law sense. *See* § 14–120(a)(6)(i). The order may require only one of several tenants to vacate—the statute limits the remedy to a tenant "with knowledge of the existence of the nuisance"—and would not seem to preclude even an ousted tenant from subleasing

the property or assigning his lease. Nor does the statute, on its face, require that the vacation be permanent; it does not preclude a temporary ouster.[4]

In this regard, an ouster order under § 14–120, by itself, is not significantly different from an ouster order that may be entered by a district court under the domestic violence law. Md.Code Fam. Law art., §§ 4–505 and 4–506 permit a district court to issue temporary and longer-lasting orders directing an alleged abuser to vacate the family home for up to 200 days. In *Barbee v. Barbee,* 311 Md. 620, 537 A.2d 224 (1988), the Court declared those proceedings to be "equitable in nature" and not subject to the monetary threshold otherwise applicable in determining whether an appeal from such an order is to be tried *de novo* or on the record.

The second form of relief—restitution of possession to the landlord—is a contingent one. Under § 14–120(f)(2)(ii), it may not be ordered unless (1) the tenant has violated an injunction issued under § 14–120(e) or an order to vacate under § 14–120(f)(1), and (2) the court has held another hearing. That remedy, though obtainable at the instance of a person other than the landlord, does suffice to terminate the tenancy and, in both form and effect, is no different than an action under § 8–402 against a tenant holding over. That form of relief, therefore, is controlled by *Carroll v. Housing Opportunities Comm'n, supra,* and, on this record, would be subject to trial by jury.

This does not mean that the entire case is subject to jury trial. The remedy of restitution is not simply an alternative one that rests upon issues of fact in common with the requests for injunctive relief; under the statute, it cannot be granted contemporaneously with the injunctive relief, as it requires a

---

4. This flexibility may not have been inadvertent. The court, though intent on ending any use of property for drug operations, may wish to consider the effect of a permanent order to vacate within 72 hours on innocent children residing in the property or on other tenants—spouses or "significant others"—who, though aware of the illegal activity, contributed nothing of significance to it and were essentially passive bystanders.

(1) a separate hearing, and (2) a finding of noncompliance with an injunctive order.[5]

■ The issues before the court with respect to relief sought under § 14–120(f)(1) are whether the property constituted a nuisance under the statutory definition and whether the tenant had knowledge of the existence of the nuisance. Because the relief under that paragraph, or under § 14–120(e), is exclusively equitable in nature, those issues are triable by the court. In contrast, the only issue with respect to relief sought under § 14–120(f)(2) is whether the tenant violated an order entered under § 14–120(e) or (f)(1). There is no occasion in such a proceeding to retry the underlying issues of nuisance and knowledge, which, necessarily, will have already been resolved against the tenant. The tenant may, of course, have defenses to the additional charge that he or she violated the order and, if the amount in controversy under the *Carroll* standards exceeds $5,000, the tenant would be entitled to have those defenses tried by a jury. As the statute is currently drafted, if the tenant complies with an order to vacate and the departure or continuing lack of occupancy constitutes a violation or effects a termination of the lease or other rental arrangement, the landlord is free to use the procedure set forth in Real Prop. art., § 8–402 for recovering possession. The county may not use § 14–120 or Cts. & Jud.Proc. art., § 4–401 for that purpose, however.

Upon this analysis, because the request for restitution of possession was not properly before the circuit court when it

---

5. It is worth noting that the restitution of possession remedy was not in the bill as introduced or as initially passed by the Senate. The remedies in those versions were limited to injunctive and general equitable relief, the 72–hour order to vacate, and an order requiring the tenant to reimburse the landlord for all reasonable costs incurred by reason of the tenant's vacating the premises. The House Judiciary Committee rewrote the bill to provide for restitution of possession, but only after the tenant was found in contempt of court for violating an order to vacate. The final version, drafted by a conference committee to reconcile the Senate and House versions, left in the restitution remedy as a sanction for violating an injunctive order but did not require, as a precondition, a finding of contempt.

"revisited" and granted the county's motion, and because that was the only form of relief that carried the right to a jury trial, the court did not err in remanding the case to the district court. In light of this conclusion, we need not address the discovery issues raised by appellant.

JUDGMENT AFFIRMED;

APPELLANT TO PAY THE COSTS.